COX v. EASLEY, ET AL.

1. Declarations of a plaintiff in trespass, made in relation to his title after the trespass complained of, are not competent evidence in *his* own favor.
2. Neither is the act of the sheriff, in omitting to make sale of the property

as that of a third person, evidence, when induced by such declarations of the plaintiff after the trespass.

3. The bailee of a sheriff, to whom the property of a third person is delivered upon a contract to return it at the sale day, has such a property in the thing bailed as will authorize him to sue a wrong doer, for depriving him of the possession.

Writ of Error to the Circuit Court of Talladega.

TRESPASS *de bonis aspertatis*, by Cox, against Easley, J. A. and E. A. Givens.

The defendants pleaded not guilty, and by agreement were to be allowed to give any matter in evidence which could be specially pleaded.

At the trial, the plaintiff offered evidence tending to prove, that before the suit was commenced, on the 22d of June, 1845, the property in the declaration mentioned, that is, a buggy and harness, was in his possession in the town of Talladega, and that the defendants then and there, took the same from him. After proving the value of the property, the plaintiff put in evidence the deposition of the sheriff of Benton county, showing that he, in that capacity, had levied on the same property in that county, as belonging to one Herndon, by virtue of sundry writs of *fi. fa.* against him. Some few days after the levy, the plaintiff, Cox, called on him for the buggy and harness, and gave as security for its forthcoming, $300 in silver. For this money the sheriff gave the plaintiff a receipt, conditioned that he return the property on or before the day of sale, which was to be the first Monday of August, 1845. At the time the plaintiff replevied the property, he claimed to be the owner of one half the buggy and harness. He also claimed them on the day of sale. The sheriff sold the undivided half of the buggy and harness on the first Monday of August, 1845, as the property of Herndon. The plaintiff had the possession of the buggy and harness from a few days after the levy, until the day of sale, or at least he received the property from the sheriff of Benton then, and returned the same to him on the day of sale. The sheriff further stated, in his deposition, that he made the

levies spoken of on the property, as that of Herndon, and sold one half of the buggy and harness as his property, *the other half was claimed by the plaintiff, whose interest the sheriff did not sell, as the plaintiff forbid the sale of his moiety.*

The defendants objected to that portion of the deposition above italicised, and the court excluded it.

The plaintiff then proposed, in connection with the other parts of the deposition, to read the words *the other half was claimed by the plaintiff.* This the court refused to allow, as it also did to let any part or portion of the excluded paragraph be read.

After all the direct and cross interrogatories with their answers had been read, the plaintiff again proposed to read the excluded paragraph, but the court still refused, and the plaintiff excepted.

In this connection it is proper to state, that in answer to a cross-interrogatory, the sheriff answered, that at the sale of the buggy and harness, the plaintiff became the purchaser.

The court charged the jury, that if they believed the testimony of the sheriff of Benton, and they should find that the only possession, and right of possession, the plaintiff had to the property sued for, were acquired by said deposit and bailment mentioned in the sheriff's deposition, then, that possession did not authorize the plaintiff to sue and maintain this action. This charge was given in reference to the testimony of the said sheriff, without considering any defence made in the case, but it was shown the defendants seized the property under an attachment, and this seizure was six days after the levy in Benton county.

The court further charged the jury, that in this action the official act of the sheriff of Benton in not selling the entire property, was no evidence whatever of the plaintiff's right to the property, and that the jury could not draw any inference favorable to the plaintiff's right to the property, or any portion of it, from the acts of the sheriff of Benton county.

The court further charged the jury, that the declarations of the plaintiff, or a claim of property by the plaintiff, as shown in the answer of the sheriff of Benton, to the last interrogatory above set out, were no evidence of the plaintiff's

right to the property.   These two last charges were given
with reference to the evidence above set out, and also with
reference to some other evidence before the jury, which tend-
ed to show the plaintiff about the 10th of June, 1845, had
possession of the property.

The court also charged, that if the jury believed, that the
plaintiff had a possession, or right of possession, to any part
or interest in the property, other than that acquired by the
arrangement with the sheriff of Benton county, as spoken of
by him, they should find for the plaintiff.

The plaintiff excepted to the several charges given, ex-
cept the one last stated, and they, with the several rulings
of the court in relation to the evidence, are now assigned as
error.

S. F. RICE, for the plaintiff in error.

1. It is settled beyond all doubt, that where there is a let-
ting for a specified time, (or a bailment on valuable conside-
ration, for a definite period,) to a third person, the possession
is in such third person, and *he alone can maintain trespass.*
[Putnam v. Wyley, 8 Johns. Rep. 432, and cases there cited
in note a.; Sutton v. Buck, 2 Taunt. 302 ; Ward v. McAuley,
4 Term R. 489 ; Gordon v. Harper, 7 Ib. 9 ; Wilson v.
Macreth, 3 Burrows, 1824; Seneca R. Co. v. A. R. R. R.
Co. 5 Hill N. Y. Rep. 180.]

2. A mere bailee may maintain trespass for the taking a
personal chattel out of his possession, by a stranger, provid-
ed the bailee is answerable to another for the chattel.   [Hare
v. Fuller, 7 Ala. Rep. 717 ; Traylor v. Marshal, at this term.]
Especially if the bailment is allowed by law.   [5 Ala. Rep.
45 ; 8 Id. 467.]

3. Where the sheriff of Benton county levies a *fi. fa.* on
personal property, as the property of E. Herndon, and lets it
to Cox, on his depositing $300, in specie, as security for the
return of the property to that sheriff on the day of sale ; and
between this letting and the day of sale, the sheriff of Talla-
dega county levies an attachment against said Herndon, on
the same property in possession of Cox—this second levy is
void and is a trespass.   [Easley v. Walker, 10 Ala. R. 671 ;
Whitsett v. Womack, 8 Id. 466, 479 ; Vinton v. Bradford, 13

Mass. Rep. 114; Rives & Owen v. Wellborn, 6 Ala. Rep. 45.]

4. The declarations of a party, forming part of the *res gesta*, are admissible evidence in his favor, and their weight must be determined by the jury—not by the court. So the *official* acts of the sheriff of Benton, and Cox's declarations, should have been left to the jury, in connection with the fact in proof, that Cox had possession of the property *before* the levy, in Benton. [Pitts v. Burroughs, 6 Ala. Rep. 733.]

5. Where the personal property of two tenants in common is levied on, by a sheriff, under an execution against only one of them, and is replevied by the other, it is competent for the latter to prove, that at the time he so replevied the property, "he claimed to be owner of one half" of the property. So it is competent for him also to prove, that on the day of sale, after he returned the property to the sheriff, that at the sale he made the same claim—and that the half so claimed by him was not sold by the sheriff. A stranger, or trespasser cannot object to such evidence. [2 Saund. R. 132; Fowler v. Down, 1 Bos. & Pul. Rep. 46.]

6. Where the personal property of two such tenants is sold by the sheriff under a *fi. fa.* against one only, the sheriff is liable in trover or trespass to the other. And his *official act* in declining to sell one half the interest of the property, is proper evidence against the tenant, who was the defendant in execution, or against one claiming under that tenant, or against a mere wrong doer. [Waddell v. Cook, 2 Hill's N. Y. Rep. 47; Rains v. McNairy, 4 Humph. R. 358.]

L. E. PARSONS, for the defendants in error, argued—

1. The general property of goods levied on by execution is in the debtor. The special property is in the officer who levies. There is no intermediate property. [Dillenback v. Jerome, 7 Cow. 294; Barker v. Miller, 6 John. 196; Gordon v. Harper, 7 T. Rep. 12; Ludden v. Leavett, 9 Mass. 104; Warren v. Leland, 9 Ib. 265; Whitter v. Smith, 11 Ib. 211; Waterman v. Robinson, 5 Mass. 303; The Commonwealth v. Morse, 14 Ib. 217.]

2. The declaration of Cox, that he owned and claimed one

half the property, was properly excluded. A party cannot be permitted to make evidence for himself in this manner.

3. The last charge given by the court was a full protection to any title which the plaintiff had established.

GOLDTHWAITE, J.—1. With reference to that portion of the deposition excluded by the court, it is unnecessary to say more, than that the declarations of the plaintiff in regard to the property, made after the trespass complained of, in our judgment, were not admissible as part of the *res gesta*. The circumstance, that the plaintiff became the bailee of the sheriff, after his levy on the property as belonging to Herndon, had been explained by the plaintiff's assertion of title to a moiety, and its recognition by that officer. This assertion could derive no additional strength from the continued assertion, nor was any fact disclosed to weaken the former claim, so as to render the continued assertion a part of any subsequent transaction in relation to the same property. His declaration then, at the time of the sale, stands unconnected with any matter then transpiring, as entirely as it would if the sale had been of a different chattel. There is no error in this particular.

2. The charge that the official act of the sheriff, in not selling the entire property, was no evidence of the plaintiff's right, we understand as referring to what took place at the sale day. Certainly, if the plaintiff's declarations at that time, inducing the action then had, are not admissible, the concession of their truth by the officer, was not a circumstance to go to the jury. In truth these matters stand on precisely the same ground, and have no more connection with the question of title, than would the plaintiff's assertion, and a concession of it by a third person, at any other time or place, after the trespass. The test of their inadmissibility is, that both the one and the other could be made, or induced to suit a particular emergency.

3. The other charge on which the case seems to have been decided, assumes, that if the plaintiff showed no other title to the property than that derived from its deposit in his possession by the sheriff of Benton, that the action could not be sustained—or in other terms, that he must, under such

circumstances be considered as the mere servant of that officer; and that the suit for the wrongful taking should be in his name. It is thus argued in this court, and many of the cases cited from Massachusetts and New York sustain this precise position. We infer that in neither of those States is there enactments authorizing the sheriff to surrender property levied on, to the defendant, on replevy or forthcoming bonds; and presume, that in both, this officer is responsible, as at common law, for the custody of property when seized under process. That the officer may constitute a bailee for property when seized, is not an open question, and he may lawfully contract with the bailee to keep it safeld, or to deliver it, either at a fixed period, or on demand. [Whitsett v. Womack, 8 Ala. Rep. 466.] The effect of a statutory replevy, or rather delivery bond, was somewhat considered in Rives v. Wellborn, 6 Ala. Rep. 45, where it was held the giving of such a bond, invested the surety of the defendant in attachment with a sufficient title to authorize a claim when the same property, before the time of delivery, was afterwards levied on by a subsequent execution, on the ground that by the first levy the property was placed within the custody of the law, and could not afterwards be levied on. My own impression, (and I speak entirely for myself,) has been, ever since this decision, that the statutes would have been better carried out by recognizing the validity of a subsequent levy by the same sheriff, or a succeeding one, and holding that to be a discharge of the delivery bond; which I understand to be the effect of the previous decision in McRae v. McLean, 3 Porter, 138. However this may be, it is certain the decision in Rives v. Wellborn, goes no farther than the holding, that property deliverd on the statutory delivery or forthcoming bond, is, notwithstanding, in custody of the law; and we apprehend, the effect of any other bailment must be, that the sheriff is in precisely the same condition with respect to the defendant in execution or attachment, and other subsequent attaching ereditors, as he would be if no bailment had been made. We say, with respect to the defendant, whose goods are seized, and other subsequent creditors, because we do not well see how a sheriff can affect their rights by a bailment to a stranger. Yet, as between himself

Cox v. Easley, et al.

and his bailee, we do not perceive any valid reason why he may not bind himself not to call for the re-delivery until the expiration of a definite period. Such a bailment was adjudged a legal one in Whitsett v. Womack, before cited; and it is now said, (and so many of the cases referred to by the defendant, hold,) that such a bailee cannot maintain an action in his own name against a wrong doer, but that the action for the redress of an injury to the possession of the bailee must be in the name of the sheriff. In the principal case cited to sustain this proposition, and where all the others are examined, it is said, the defendant in execution has the general property, and the sheriff only a special property. Hence it is inferred there is no intermediate condition, so as to authorize the sheriff's bailee to sue. [7 Cowen, 294.] This seems to us a mistaken view of the subject, for can it be said that one who has only a special property is unable to bail the thing to another? It does not admit of question, we think, that the sheriff may require his bailee to deliver the thing bailed according to the contract and that he is under no legal obligation to pursue one who takes the property from the bailee, unless this obligation arises out of the terms of the contract. If then he pursues his bailee to a recovery, can it be said the bailee is without remedy? We are free to admit, that the custody of a mere servant will not enable him to maintain a suit, but this rests upon the circumstance, that he, as a servant, is not responsible to his master; but on principle it would seem, that whenever there is a liability to the bailor, the bailee is entitled to his action against the wrong doer. This principle governs the decision of this court in Hare v. Fuller, 7 Ala. Rep. 717, and is fully recognized by the text writers. See also, Bac. Ab. Trespass C.; 1 N. H. Rep. 289; 2 Ib. 56; 3 Conn. 160.

Having come to the result that a bailee is authorized to bring trespass for an injury to the possession, whenever he is amenable himself to the bailor, it remains to consider if such is the position of this plaintiff in regard to the sheriff. That it is, seems clear from the fact, that his liability was not only

47

conceded, but provided for by the deposit of money, which
would have been forfeited if the property was not returned.
This view shows the error of the charge we are considering,
and its effect must be a reversal of the judgment.

Judgment reversed and cause remanded.