# Alabama Great Southern Railroad Co. v. Jones.

*Action against Railroad Company for Damages to Stock.*

1. *Action for damages to personal property; possession sufficient title against trespasser.*—Possession of personal property, carrying with it a presumption of ownership which is not disputable by a trespasser who does not connect himself with the legal title, will support an action in tort for damages done thereto by such trespasser.

2. *Same; plaintiff's right to bring suit not affected by possession of servant.*—In such action, the plaintiff relying on possession for title, the fact that the personal property was in the custody of an overseer or servant of the plaintiff, who did not assert any interest in it, or possession of it, as distinguishable from the plaintiff's possession, does not affect the plaintiff's right to maintain the suit.

3. *Misleading charge given at request of a party, not a reversible error.* While a charge requested, which, without explanation, has a tendency to mislead the jury, by diverting them from the consideration of material evidence, may be refused by the primary court without error, the giving of such a charge is not a reversible error; but, in such case, the party complaining should ask explanatory or additional instructions, to obviate its misleading tendency.

4. *Right of owners of domestic animals to allow them to run at large; doctrine of common law in reference to, does not prevail in this State.*—The doctrine of the ancient common law, that the owner of domestic animals must keep them in his close, and can not, without becoming a trespasser, suffer them to run at large upon the unenclosed lands of others, not being suited to the actual condition of the territory of the State in its early settlement, nor adapted to the general understanding and unvarying custom and habits of the people, and being irreconcilable with the legislation in reference to estrays, and injuries to, and damages done by such animals, never prevailed in this State; and hence, an owner of such animals can not be regarded as a trespasser, or as contributing to their injury, if he suffers them to go at large, and they wander upon an unenclosed railroad, and are there injured by a passing train.

5. *Injury to stock by railroad company; ordinary and reasonable care and diligence must be exercised by company.*—A railroad company has the undoubted right to the free, unmolested and exclusive use of its road for the purposes for which it is appropriated; and, if under all the circum-

[Alabama Great Southern Railroad Co. v. Jones.]

stances, ordinary and reasonable care and diligence are exercised to avoid injury to domestic animals found upon the road, the duty to which it is subject is performed; and for injuries which are unavoidable, it can not be made liable.

6. *Reasonable care and diligence; when a question of law, and when of fact.*—Whether ordinary and reasonable care and diligence have been, in a particular case, observed, or omitted, is generally a mixed question of law and fact. When the facts are not disputed, and the deductions or inferences to be drawn from them are indisputable; or when the standard and measure of duty are fixed and defined by law, are the same under all circumstances, the question is for the decision of the court; but if the facts are disputed, or, if not disputed, the existence of negligence is an inference which, as mere matter of discretion and judgment, may or may not be drawn from them, the question must be submitted to the jury.

7. *Railroad corporations; failure to employ good and safe machinery, etc., evidence of negligence.*—It is the duty of railroad companies to adopt the best precautions against danger which are in use, and to procure and employ good and safe machinery and appliances, such as are most in use, and approved by the skillful and experienced in the operation of trains, and in the management of railroads; and the omission of this duty is, at least, evidence of negligence.

8. *Same; defective head-light evidence of negligence.*—Hence, in an action against a railroad company for damages, done to stock by its train, a charge, given at the plaintiff's request, instructing the jury, in substance, that if they believed from the evidence that, at the time of the accident, it was a starlight night, and the train was running at the rate of twenty-five miles per hour, and could not have been stopped by the use of all proper means, in a less space than one hundred and twenty yards, and that the head-light used on the locomotive only enabled the engineer to see the road about fifty or sixty yards ahead, and the stock so injured were on the track, and could have been seen, had the proper light been provided, and proper vigilance been exercised in time to have prevented the injury, then they would be authorized to find the defendant guilty of negligence,—is free from error.

APPEAL from Greene Circuit Court.

Tried before Hon. WM. S. MUDD.

This was an action by Winston Jones against the Alabama Great Southern Railroad Company, a corporation operating a railroad in this State, to recover damages alleged to have been done to designated stock belonging to the plaintiff by the defendant's train, "through and in consequence of the negligence and want of due care and skill of its agents and servants in operating said railroad and running its locomotive and cars over its said railroad." The defendant pleaded (1) the general issue; (2) that at the time the stock were alleged to have been injured, they were not the property of the plaintiff; (3) that at the time of the injury, the plaintiff suffered said stock to go at large in a field not enclosed by a fence, and in which the defendant had a right of way, and to go on defendant's track at a time when defendant's cars were passing over the same; and that by reason thereof, and, without negligence on defendant's part, its locomotive or cars accidentally, and in the night-time, run against or over said stock, thereby causing the injury com-

plained of; and that, if any damage was done, it was not by or through the defendant's negligence; and (4) that at the time of the alleged injury, the defendant, a corporation existing under the laws of this State, and being in possession of the right of way over the lands on which the stock were alleged to have been injured, was running by steam power locomotives and cars over their track on this right of way, and the plaintiff suffered said stock to go at large on or near said railroad and on said right of way and track; and that by reason thereof, and a want of care on the part of the plaintiff, and without any fault on the part of the defendant, the locomotive or cars of defendant accidentally run against or over said stock, and thereby they sustained the alleged injury; and that, if any damage happened to said stock, it was caused by such accident, and not by defendant's fault. The trial was had, as appears from the judgment-entry and bill of exceptions, on issue joined on these pleas, and resulted in a verdict and judgment for the plaintiff.

On the trial the plaintiff examined as a witness one Charles Ellis, "who testified that, being employed by plaintiff, January 1st, 1879, he was the manager on the plantation, near Eutaw, known as the 'Jones place,' belonging, as witness is informed, to the estate of Joel W. Jones, deceased, in Greene county; and that he made his contract as such manager, and was put in charge of the place and stock by the said Winston Jones, except two of the mules, which he, witness, afterwards bought himself for, and under instructions from said Winston Jones, and the mare which said Winston Jones afterwards sent to witness from Mobile; and that he received all his orders from him in regard to the management of said place, but he did not know to whom the stock on said place belonged, or who was the owner thereof; that he had no dealings with any one else except plaintiff, either as to the plantation, stock thereon, or crops raised thereon; that all supplies were furnished by plaintiff, and cotton raised was shipped to him; that, to his knowledge, no one else had any title or ownership in said stock; but that the said Jones had, so far as he knew, the entire control and management of the said plantation, stock, and all the other property belonging thereto." This witness further testified that on Sunday morning, November 14th, 1879, he turned the mules and mare which were killed and injured by defendant's train, out of the lot on the "Jones place." The evidence introduced on behalf of the plaintiff further tended to show that said mules and mare were killed and injured by the passenger train of defendant on the night of November 14th, 1879, on the lands of another, about a mile and a half from the said "Jones place;" and that it was a clear starlight night, and there was no fog; that "the track of the road at and from the place

of collision each way was through an open field, and staight for more than a mile, and that there was no obstruction on either side of the track, near enough to obstruct the view from the approaching train." The value of the stock was also shown.

The evidence introduced on behalf of the defendant tended to show, that the night of November 14th, 1879, when the stock were killed and injured, was dark, cloudy and foggy, it having rained that day; that the train was behind time on account of having a crippled engine; that, at the time the stock were run over or against, the train was on a down grade, in a low, flat place, just after crossing a trestle over a creek, and was not making over schedule time, running about twenty-five miles per hour; that the engineer could not, at that time and place, see more than sixty yards ahead of him on the track, by the head-light, and that a train running at the speed of twenty-five miles per hour could not be stopped by the appliances in use on locomotives and trains in a less space than one hundred and twenty-five yards; that immediately on crossing the trestle, the engineer first discovered the stock coming upon the railroad within thirty-five or forty yards ahead of the engine, when he immediately blew the whistle, applied the brakes (which were air-brakes), and reversed the engine, "all of which was done in an instant of time," but that the train was so near the stock, when he first discovered them, that they were run over or against before he could possibly stop the train; and that the head-light was good, and that the brakes were in good working order. The evidence for the defendant further tended to show, that on the side of the creek where the stock seemed to have come on the railroad, from a little path, "the cottonwood trees and saplings grew very thick to within fifty feet of the track, and that an engineer on a train, coming on the down grade to that point, could not see stock or anything else on that side of the creek, until the engine had crossed the trestle, on account of the cottonwood trees, and chicken corn, which was exceedingly thick at that point," and grew up to within a few yards of the track. There was also evidence tending to show that, at the time of the accident, "the chicken corn was, to a great extent, trampled down by stock feeding thereon, and by wagons hauling out corn, a crop of which was grown on both sides of the railroad, the land being cultivated up to the railroad ditches near the track." The bill of exceptions purports to set out all the testimony, and the substance of the material portions thereof is given above.

The court charged the jury, *ex mero motu*, "that if they "should believe from the evidence, that the plaintiff had the general supervision, control and management of the plantation, stock and all the other property belonging to said plantation,

that he employed the overseer and agent, and purchased the stock that was killed and injured, and that Ellis was his agent, employed by him, and had, at the time said stock was killed and injured, control of the said stock, as the agent of plaintiff, then the plaintiff had such an ownership in said stock, so killed and injured," as would authorize him to bring the suit, and he could recover for any injury the jury believed was done to said stock by the wrongful acts of the defendant, alleged in the complaint. The court also gave, at the written request of the plaintiff, this charge: "If the jury believe from the evidence, that, at the time of the collision, the train was running at about the rate of twenty-five miles per hour, and that the persons running the train, by using all proper means in their power, could not stop the train in a less space than one hundred and twenty yards; that it was on a starlight night, and the light provided by the defendant or its servants only enabled the engineer to see the road about fifty or sixty yards ahead of the engine; and if the jury are satisfied that the stock killed or injured, seven or more in number, were on the track, and could have been seen, had the proper light been provided, and proper vigilance exercised, in time to have prevented the collision, then the jury would be authorized to find the defendant guilty of negligence." To the giving of these charges the defendant duly excepted.

The defendant also reserved an exception to the refusal of the court to give to the jury the following charge at its written request: "If the jury believe from the evidence, that, at the time when said mare and mules were killed and injured, the plaintiff's agent turned them out, with no one to take care of, or look after them, in that portion of the country where there were no fences, and through which the railroad company had its track, on its own right of way, and over which its cars were and had been passing at various times, during the day and night; and the plaintiff's agent left said stock to wander wherever they pleased, this is a violation of the obligation which enjoins care and caution on the part of the plaintiff, and constitutes such negligence on the part of the plaintiff as contributed to the result complained of; and they would be authorized in finding a verdict for the defendant, unless the evidence satisfied them that the servants or employees of the railroad did not use diligence of foresight, due precaution, proper care and diligence to stop said train, so soon as they discovered the stock on or near the track, so as to avoid, if possible, any injury to the same."

The charges given and the charge refused are here assigned as error.

[Alabama Great Southern Railroad Co. v. Jones.]

CLARK & McQUEEN, for appellant.—(1) It is admitted that, although the complaint avers that the injury complained of was done through the negligence, want of care and skill of defendant's agents and servants, the burden of proof is on the defendant to show that the requirements of section 1699 of the Code were complied with by the engineer. As to these requirements, see *Mobile & Ohio R. R. Co. v. Williams*, 53 Ala. 595; *S. & N. R. R. Co. v. Thompson*, 62 Ala. 494: *S. & N. R. R. Co. v. Williams*, 65 Ala. 74. The proof shows that these requirements were complied with, and the defendant was guilty of no negligence, want of care or skill. (2) The complaint avers that the stock injured and killed *belonged to the plaintiff*, and the burden of proof is on him to show this fact. The evidence fails to show that the plaintiff owned the stock, or that he ever had possession thereof, or the right of possession. Ellis was in possession, managing, etc., and stood in a better attitude for a plaintiff than Jones. The evidence on this point is discussed at length. To maintain this action "the plaintiff must show that, at the time when the injury was done, he had either the *actual* possession, or else he had a *constructive* possession in the thing injured, *and that he had a general or qualified* property therein."—1 Wait's Law & Prac. pp. 805–6; *Thompson v. Spinks*, 12 Ala. 155; *Stodder v. Grant*, 28 Ala. 416; *McNutt v. King*, 59 Ala. 597; *Yerby v. Sexton*, 48 Ala. 311. (3) Under the evidence the charge given at plaintiff's request was erroneous. Evidence discussed on this point, and the cases of *Memphis & Charleston R. R. Co. v. Lyon*, 62 Ala. 71; and *Jones v. Ala. Great So. R. R. Co.*, not reported, cited. (4) The plaintiff was guilty of contributory negligence in turning his stock out, and allowing them to go at large off the place. The act of the legislature, known as the stock law, was the law of the land, and made it the duty of every citizen to keep up his stock, at least at night. (5) The charge requested by the defendant, though drawn up hurriedly, was a proper charge under the evidence, and should have been given.

SNEDECOR & HEAD, *contra*.—(1) The charge given by the court, *ex mero motu*, asserts a correct legal proposition. A defendant, when sued for an injury to property in possession of the plaintiff, can not set up a paramount outstanding title in a third person. If there was evidence that Jones was in possession as agent or bailee merely, and not as owner, he could recover in this action.—*Hare v. Fuller*, 7 Ala. 717; 2 Add. on Torts, p. 531, § 1292. But the undisputed evidence is, that Jones, by his agent, Ellis, had entire possession, management and control of the property; and there is no evidence that any one

[Alabama Great Southern Railroad Co. v. Jones.]

else had any right, title or interest whatever therein. (2) The charge given at plaintiff's request is the same, and is based on the same evidence that was passed on by this court on former appeal; and it was there held a proper charge.—*Jones v. A. G. S. R. R. Co.*, not reported. See also *M. & C. R. R. Co. v. Lyon*, 62 Ala. 71. (3) The charge requested by the defendant was properly refused. It has been frequently decided by this court, that permitting stock to run at large does not constitute contributory negligence.—*Jones v. A. G. S. R. R. Co., supra; M. & O. R. R. Co. v. Williams*, 53 Ala. 595; *S. & N. R. R. Co. v. Williams*, 65 Ala. 74; *Foster v. Holly*, 38 Ala. 76.

BRICKELL, C. J.—The general rule is, as is insisted by counsel for the appellant, that an action for a tort must be prosecuted in the name of the party having the legal interest; and, if it be an injury to property, in the name of the party having the legal title to the property at the time of the injury.—1 Chit. on Pl. 69 ; *Roberts v. Connelly*, 14 Ala. 235. We pass over the fact, that of a part of the stock injured the plaintiff had not only possession, but the general, absolute property. Of the others, and of the plantation to which they were attached he had the open, unmolested possession, exercising the dominion of ownership. The bare possession of personal property constitutes a sufficient title to enable the party enjoying it to pursue legal remedies against a mere wrongdoer. In legal contemplation "possession, indeed, may be considered as the primitive proof of title, and the natural foundation of right."—*Linscott v. Trask*, 35 Me. 150. The possessor of personal property is *prima facie* the owner; and the presumption of ownership arising from it is not disputable by a trespasser, who does not connect himself with the true title.—*Cook v. Patterson*, 35 Ala. 102; *Hare v. Fuller*, 7 Ala. 717; *Cox v. Easley*, 11 Ala. 362. There is no force in the suggestion that Ellis, not the plaintiff, had the possession of the stock. He was the mere overseer or servant of the plaintiff, supervising and managing the plantation under his instructions, not asserting any interest in the property, or possession of it, as distinguishable from the possession of the plaintiff, and incapable of maintaining in his own name any action for an injury to it.—*Heygood v. State*, 59 Ala. 49. We think it indisputable that the plaintiff was entitled to maintain the action.

The instruction given on request of the plaintiff is not drawn very carefully, and, it may be, without explanation, had a tendency to divert the consideration of the jury from material evidence, and to mislead them. If this be true, the Circuit Court could, without error, have refused to have given it; but, having given it, the defendant, to obviate its misleading ten-

dency, should have requested explanatory or additional instructions. And such instructions not having been requested, a reversal of the judgment, because of the tendency of the instruction to mislead, can not be allowed. As we construe the instruction, it affirms that the jury were authorized, not bound or compelled, to impute negligence to the defendant, if they found from the evidence, that the injury occurred on a clear, star-light night, when the train was running at such a rate of speed, that those having charge of it, by the employment of all the means in their power, could not stop it within the distance that, by the aid of the head-light provided, they could see obstructions on the track, and the injury would have been avoided if a suitable head-light had been provided, and proper diligence exercised. The charge requested by the defendant affirms, that the plaintiff was guilty of contributory negligence in suffering the stock to run at large near an unenclosed railroad, upon which trains were passing day and night.

The relation, the respective right, duty and liability of the owners of domestic animals, such as horses, mules, cattle, sheep, swine, etc., stock as they are usually termed, suffered to run at large, and a railroad company operating trains upon an unenclosed road, the statutes define and regulate, and have been the subject of numerous judicial decisions.—Code of 1876, §§ 1699 –1704; *N. & C. R. R. Co. v. Peacock*, 25 Ala. 229; *M. & C. R. R. Co. v. Bibb*, 37 Ala. 699; *N. & C. R. R. Co. v. Williams*, 65 Ala. 74; *Jones v. Ala. Gt. Sou. R. R. Co.* [Not reported.] The doctrine of the ancient common law, that the owner of domestic animals must keep them in his own close, and can not, without becoming a trespasser, suffer them to run at large upon the unenclosed lands of others, never prevailed in this State. There was not probably a principle of the common law so little suited to the actual condition of the territory of the State in its early settlement, and more illy adapted to the general understanding and unvarying habit and custom of the people; and it is not reconcilable with the legislation in reference to estrays, and injuries to, and damages done by wandering domestic animals. This legislation is founded upon the theory of the right of the owner to suffer them to run at large, protection to him in the exercise of the right, and subjection of him to liability for damage done by them only when they break a lawful enclosure.—Code of 1876, §§ 1552–97. The owner can not be regarded as a trespasser, or as contributing to their injury, if he suffers them to go at large, and they wander upon an unenclosed railroad. In turning them upon, or suffering them to go upon lands not enclosed, he is in the exercise of a lawful right; and to demand of the company operating trains upon a track not enclosed to prevent them from wandering up-

[Alabama Great Southern Railroad Co. v. Jones.]

on it, ordinary care and diligence to avoid injuries to them, is also his lawful right. The right is the same in character and degree, as his right to exact from any other landed proprietor, whose premises are not enclosed, the same duty, if the animals are found upon such premises. The company has the undoubted right to the free, unmolested, exclusive use of the road, for the purposes to which it is appropriated, and, if under all the circumstances, ordinary and reasonable care and diligence are exercised to avoid injury to animals found upon the road, the duty to which it is subject is performed, and for injuries unavoidable it can not be made liable.—*Zeigler v. S. & N. R. R. Co.* 58 Ala. 594.

Whether ordinary and reasonable care and diligence have been in a particular case observed, or whether they have been omitted, is generally a mixed question of law and of fact. When the facts are not disputed, and the deductions or inferences to be drawn from them are indisputable; or, if the standard and measure of duty are fixed and defined by law, and are the same under all circumstances, the question is for the decision of the court, and not for the verdict of the jury. But if the facts are disputed, or, if not disputed, the existence of negligence is an inference, which, as mere matter of discretion and judgment, may or may not be drawn from them, the question must be submitted to the jury.—2 Thomp. on Negl. 1236–40. In *M. & C. R. R. C. v. Lyon*, 62 Ala. 71, we held that it is negligence *per se*, negligence as matter of law, for a railroad company to run its train in the night-time, with a head-light not having sufficient capacity to cast light upon the track so that the engineer could perceive obstructions for the distance within which the train could be stopped. It was not intended to assert more than that it is the duty of railroad companies to employ the best machinery and appliances which are in use, and the failure to employ them, in view of the hazardous agencies they control, the dangers necessarily incidental, is a want of the care and diligence a man of ordinary prudence would observe. The omission to provide them is a violation of the duty enjoined by law, and if there be no more in the particular case than the omission and consequent injury, the court may, as matter of law, declare there is actionable negligence. The proposition must, however, be accepted with limitations and qualifications; from unknown causes, the machinery and appliances may, in the course of travel, become defective, or natural causes may intervene which render it inefficient; the train can not be expected to stop on the track. The stoppage may involve more of peril than its continued running as the machinery will permit; and, if under such circumstances, reasonable care and diligence are observed, negligence could not be imputed. If it were true, that from

[Cohen v. Coleman.]

fog, or from driving rains or snow, the light cast from a proper head-light was obscured, the running of the train with reasonable care in view of that circumstance could not be deemed negligent. This, however, is an inquiry the instruction does not involve. The dark, cloudy night, and the dense fog were, as the evidence of the defendant tended to show, the causes obscuring the light, and not any defect in, or insufficiency of the head-light. The instruction proceeds upon the hypothesis that these causes did not exist, that it was a clear, starlight night, a phase of the case shown by the evidence of the plaintiff, and that the head-light was insufficient, and not such a light as the defendant was bound to provide, and the failure to provide a proper light was, under the circumstances, evidence of negligence for the consideration of the jury. The proposition that it is the duty of railroad companies to adopt the best precautions against dangers which are in use, to procure and employ good and safe machinery and appliances, such as are most in use, and approved by the skillful and experienced in the operation of trains and the management of railroads, and the omission of the duty, to say the least of it, is evidence of negligence, can not be seriously controverted.—1 Thomp. on Negl. 495; *F. & B. Turnpike Co. v. P. & T. R. R. Co.* 54 Penn. St. 345. This is all the instruction, properly construed, can be regarded as asserting.

We find no error in the record prejudicial to the appellant, and the judgment must be affirmed.