# Birmingham Mineral R. R. Co. *v.* Harris.

### *Action for Negligent Killing of Mules.*

1. *Stock killed or injured; burden of proof.*—In an action against a railroad company for damages for negligently killing the stock of the plaintiff, upon proof by plaintiff that his stock had been killed or injured by the defendant, and their value, the *onus* devolves on the defendant to rebut the presumption of negligence.

2. *Act of February 28, 1887, amending § 1700 of Code of 1876.*—The Act of Feb. 28, 1887, amending § 1700 of the Code of 1876, printed as a note on page 300 of Code of 1886, is now the law, taking the place of § 1147 of Code of 1886, which it was designed to substitute.

3. *The Geo. Pac. R. R. Co. v. Hughes*, 87 Ala. 610, and *The Montgomery & Eufaula R R. Co. v. Perryman*, 91 Ala 413, are each overruled.

4. *Not negligence to turn stock in pasture through which railroad passes.* One living on the line of a railroad that runs through his pasture, is guilty of no negligence in allowing his stock to run upon his own pastures, or upon the commons. He is not required to fence against a railroad.

5. *Negligence; for what railroad company accountable.*—Railroad companies that knowingly run their trains under conditions rendering it impossible for those in charge to prevent injuring stock straying on their tracks, are accountable for the loss when injury results.

6. *When evidence of appraised value illegal; ex parte.*—A question by the defendant: "What were the mules appraised at?" when the evidence shows that said mules were not appraised on the demand of the plaintiff, nor in writing, calls for illegal and *ex parte* evidence.

7. *Question ignoring proper look-out*—It was improper for defendant to ask the engineer if he saw the mules as soon as the light of the engine permitted him to see them, since such question ignored the maintenance of a proper lookout by the engineer at the time.

8. *Rate of speed evidence of negligence.*—It was proper for plaintiff to ask the engineer when his train left O., when it arrived at B., the distance and number of stops between the two places, and the average duration of such stops, since the rate of speed of the train was a matter of which plaintiff could complain.

9. *Evidence illegal without a proper predicate.*—On the examination of the engineer as to his written report of the accident to the company, an objection to his examination as to its contents, without first showing the time and place when and where the report was made, was properly overruled.

10. *Interruption of cross-examination of witness; ex parte report.*—It is within the discretion of the court to refuse the defendant permission to interrupt a cross-examination of his witness by the plaintiff. It is proper to disallow an inquiry of the engineer about a report of the accident made by him at another time and place, and for aught that appeared, was ex parte.

11. *Testimony of expert admissible.*—It was error to refuse to allow defendant to ask the engineer if sounding the cattle alarm and ap-

[Birmingham Mineral R. R. Co. v. Harris.]

plying the air brakes were a more effective means of saving the mules than reversing the engine, since the engineer was an expert.

12. *Inquiry as to visible physical fact permissible.*—It was not error to permit plaintiff, in rebuttal of his own witness, and over defendant's objection, to ask "whether there was curve enough to prevent seeing along the track through there," since that was an inquiry as to a visible and certain physical fact.

13. *Remarks of counsel, proper.*—It was proper for plaintiff's counsel to say, in his argument to the jury, "that the burden of proof was on defendant to acquit itself of negligence; that the law was reasonable, because,, if it were otherwise, plaintiff would be compelled to put defendant's employees on the stand, and prove by them their own negligence."

14. *Same.*—It was also proper for such counsel to say: "Don't you know, gentlemen of the jury, that fast running was the cause of the killing of plaintiff's mules?"

15. *Charge as to burden of proof.*—It was not error to charge the jury "that, after it was shown that plaintiff's mules were killed on defendant's railroad by a moving train, the burden of proof was on defendant to show that it was not negligent in respect to a lookout.

16. *Rate of speed amounting to negligence.*—An instruction that if the jury believed the evidence they could not allow damages for the mules killed by either train was properly refused, since both engineers testified that it was impossible, at the rate of speed at which they were running at the time of the accident, to stop their trains in time to save the mules, if so, it was negligence for which the company was liable.

17. *Charge ignoring duty of engineer as to speed and lookout.*—It was proper to refuse an instruction that if the jury believed that none of the mules were seen in time to stop the trains by the use of all possible means, or if, at their rate of speed, they could not have stopped within the distance within which the headlights would reveal objects on the track, and that the headlights were such as were used on well-regulated roads, they must find for defendant, since such instruction ignored the duty of the engineers to keep a lookout, and not to run their trains at a negligent rate of speed.

18. *Charge on effect of evidence should be refused.*—An instruction that, "if you believe the evidence, you must find for defendant," was properly refused, as being on the effect of the evidence.

19. *Charge misplacing burden of proof, properly refused.*—It was proper to refuse instructions which required plaintiff to show by what train the mules were killed, and that defendant was negligent.

APPEAL from Birmingham City Court.

Tried before the Hon. H. A. SHARPE.

Action by George C. Harris against the Birmingham Mineral Railroad Company to recover for the negligent killing of plaintiff's mules.

All the facts of the case, and the rulings of the court upon the evidence, are sufficiently shown in the opinion. Upon the introduction of all the evidence the defendant requested the court to give the following written charges, and separately excepted to the court's refusal to give each of them, as asked : (1). "There can be no recovery by plaintiff for any mules which the jury, from the evidence, are unable to de-

termine where killed, either by the engine of the witness Jesse, or that of the witness Orr, if the jury believe that any were so killed." (2). "If the jury believe the evidence, they can not award plaintiff any damages for the mules killed by the train of which the witness Jesse was engineer, if they believe any mules were so killed." (3). "If the jury believe the evidence, they can not award plaintiff any damages for the mules killed by the train of which the witness Orr was engineer, if they believe any mules were so killed." (4). "If the jury believe that the engine which the witness Orr was running killed two of the mules for which recovery is sought, and that the engine which the witness Jesse was running killed the other two of the mules for which recovery is sought, then they must find for the defendant, under the first count." (5). "If you should believe from the evidence that the train on which the witness Jesse was engineer did not kill either of the mules for which this suit was brought, then, for two of the mules, for the killing of which this suit was brought, you must find for the defendant." (6). "If two of the mules, for the killing of which this suit was brought, were killed by a train not disclosed or discovered by the evidence in this case, you must find for the defendant as to the killing of said two mules." (7). "If the jury believe that any of the mules, for the value of which recovery is sought by plaintiff in this action, were killed by any other engine than those operated by the witness Orr, or the witness Jesse, the burden is on the plaintiff to show that such mule or mules were killed by defendant's negligence." (8). "If the jury believe that none of the four mules were seen by defendant's servants in time, by the use of all the means at hand, to have stopped their trains, then defendant's servants were not required to attempt to stop them, and the jury must find for defendant." (9). "The burden of proof is on the plaintiff to show that defendant's engineers were negligent in failing to keep a proper lookout for the plaintiff's mules." (10). "The burden of proof is on the plaintiff to show that the plaintiff's mules were perceived on the track in time, by the use of all the means in the power of defendant's engineers, to have stopped the trains." (11). "If the jury believe that any one of the mules, for the value of which recovery is sought in the complaint, was not killed by either the train of which the witness Orr was engineer, or the train of which the witness Jesse was engineer, they can not award the plaintiff any damages for such mule or mules." (12). "Unless the jury believe that all four mules, for the value of which recovery is sought in this action, were killed by either the train on which the witness

[Birmingham Mineral R. R. Co. v. Harris.]

Jesse was engineer, or the train on which Orr was engineer, they can not award plaintiff damages for all of said four mules." (13.) "If the jury believe that, at the rate of speed at which defendant's trains were running, they could not have stopped within the distance within which the headlights would reveal stock, and that such headlights were used on many well-regulated railroads at the time, your verdict must be for defendants." (14). "If the jury believe that the defendant's engineers on the trains which killed plaintiff's mules, for the value of which recovery is sought in this action, exercised reasonable diligence in the matter of keeping a lookout ahead for obstructions, and if they believe all the evidence, they must find for defendants." (15). "If you believe the evidence you must find for the defendant." (16). "If you believe the evidence, you must find for the defendant under the first count of the complaint." (17). "If you believe the evidence, you must find for the defendant under the second count of the complaint." (18). "If you believe the evidence, you must find for the defendant under the third count of the complaint." (19.) "If you believe the evidence, you must find for the defendant under the fourth count of the complaint." (20). "The burden of proof is on the plaintiff to show that the defendant was negligent in failing to sound the cattle alarm." The court charged the jury, at the request of the defendant, that there was no evidence that defendant was guilty of any negligence in running its trains at the speed at which the evidence showed its trains were running at the time and place of the injury.

The defendant appeals, and assigns twenty-eight grounds of error.

HEWITT, WALKER & PORTER, for appellants. (No brief.)

CABANISS & WEAKLEY, for appellee.

1st. Proof of injury to stock by a railroad train makes out a *prima facie* case against the company, and it must show (1) if the accident occurred at one of the places named in the statute, a conformity to the statutory requirements, and (2) if elsewhere, that the injury was not under such circumstances as rendered the defendant liable under the general rules of negligence.—*R. R. Co. v. Bayliss*, 74 Ala. 150 ; *R. R. Co. v. Kelsey*, 89 Ala. 287 ; *R. R. Co. v. Moody*, 90 Ala. 46 ; *R. R. Co. v. Hembree*, 85 Ala. 484 ; *R. R. Co. v. Bees*, 82 Ala. 340 ; *R. R. Co. v. McAlpine*, 80 Ala. 73 ; s. c., 75 Ala. 115 ; *R. R. Co. v. Beaver*, 70 Ala. 216 ; *R. R. Co. v. Jones*, 71

Ala. 489 ; *R. R. Co. v. Williams*, 65 Ala. 74; *R. R. Co. v. Thompson*, 62 Ala. 494; *R. R. Co. v. Williams*, 53 Ala. 595.

2nd.  It is the duty of an engineer of a moving train, to keep a diligent lookout ahead for obstructions, and if his failure to do so materially contributes to the injury, this is negligence, which renders the company liable even though such negligence was not the sole cause of the injury.— *Western R'wy of Alabama v. Sistrunk*, 85 Ala. 352 ; *R. R. Co. v. Watson*, 90 Ala. 45.

3rd.  Proof of injury to stock by a moving train on a railroad, devolves on the company the burden of showing that the engineer kept a proper lookout for obstructions as well as to acquit itself of all other negligence.—*R. R. Co. v. Watson*, 90 Ala. 41 ; *R. R. Co. v. Lazarus*, 88 Ala. 458 ; *R. R. Co. v. Caldwell*, 83 Ala. 196 ; Cases cited under proposition 1, *supra*.

HARALSON, J.—We held in the *S. & N. Ala. R. R. Co. v. Bees*, 82 Ala. 340, that when a plaintiff proves his stock has been killed or injured by a railroad train, and their value, even if the evidence fails to show, distinctly, that the engineer either saw the animals or could have seen them by ordinary diligence, in time to stop the train, to prevent the injury, the *onus* devolves on the railroad company to rebut the presumption of negligence, and no explanatory or exculpatory evidence being offered, the plaintiff is entitled to a verdict.  To the same effect are many other adjudications of this court.— *Geo. P. R. R. Co. v. Blanton*, 84 Ala. 157 ; *Ala. Gt. So. R. R. Co. v. McAlpine*, 75 Ala. 114; *L. & N. R. R. Co. v. Posey*, 96 Ala. 262.  These decisions, except the last were under sections 1699 and 1700 of the Code of 1876. (§ 1144 and 1147 of Code of 1886.)

2.  The codifiers of the Code of 1886, or the legislative committee to which the work of the codifiers was referred, inserted into § 1700 of the Code of 1876, the words, *"at any one of the places specified in the three preceding sections,"* thereby bringing about, without more, a change in the rule as to the burden of proof for injuries occurring at places not specified in § 1699 of that Code, constituting § 1144 of the Code of 1886.

The act adopting the Code of 1886, was approved Feb'ry. 28, 1887, (Acts 1886–7, page 47), the second section of which provides, "No act passed at the present session of the General Assembly shall be repealed or affected in any manner, by the adoption of this Code, but all acts amending sections of the Code of 1876, which sections have been incorporated

in this Code, shall be printed in place of, and as such sections."

On the same day,—February 28, 1887—an act was approved, "To amend § 1700 of the Code," which amended section is an exact transcript of that section, as it is in the Code of 1876, without any change. (Acts 1886–7, p. 146). It was evidently intended as an amendment of that section, as it had been modified by the codifiers or legislative committee, and to be carried into the Code of 1886, so as to restore it to its original form, without amendment, as to burden of proof.

That act as printed in the Code of 1886, as a note, on page 300, is now the law, taking the place of § 1147, which it was designed to substitute.

This act—of the 28th of February, 1887—as we have said, is an exact copy of § 1700 of the Code of 1876. That section was enacted on the 31st January, 1861, and appears in the Code of 1867, as § 1401, which section was afterwards, and before it appeared in the Code of 1876, amended, by making it applicable to persons as well as to stock, or other property, and with this exception, this statute is now, as it was when first enacted, in 1861.

That original statute was construed by this court in the case of *Mobile & Ohio R. R. Co. v. Williams*, 53 Ala. 595, in which the court said, "The effect of the statute is, that a railroad company is liable for injuries to stock, when they result from the negligence of its servants or agents, whenever or wherever it may occur. If the injury occurs at or near any public road crossing, or any regular depot or stopping place, or within the corporate limits of any town or city, or because of an obstruction which could or ought to have been perceived, no degree of diligence will excuse the company from liability, unless all the requirements of the statute have been observed. In either case, the injury being shown, the burden of proof is on the railroad company to acquit itself of negligence, or to show a compliance with the statute. If any other construction of the statute should be adopted, it would almost license the destruction of cattle or other stock by railroads."

That ruling was subsequently followed in the cases of the *E. T., Va. & Ga. R. R. Co. v. Bayliss*, 74 Ala. 159; *Clements v. E. T., Va. & Ga. R. R. Co.*, 77 Ala. 537; *Ala. Gt. So. R. R. Co. v. McAlpine*, 75 Ala. 118; s. c. 80 Ala. 73. In this last case, the court explained and limited some of the expressions in the *Williams* and *Clements cases, supra*, but the rule as to the burden of proof, viz,—that injury raises the presumption of negligence, and casts on the railroad com-

pany the burden of disproving it,—has not been .disturbed. When, therefore, the General Assembly, passed said act of the 28th of February, 1887, it re-adopted § 1700 of the Code of 1876, as previously construed by this court, which was an adoption of the judicial construction previously placed upon it, and being the last legislative expression on the subject, we feel bound by it.—*Ex parte Mathews*, 52 Ala. 51; *The N. O. & S. R. R. Co. v. Jones*, 68 Ala. 54; *E. T., Va. & Ga. R. R. Co. v. Bayliss, supra; Ex parte State, in re Long*, 87 Ala. 54.

A construction different from the one we now feel constrained to place on this statute, was given to it in the cases of *The Geo. Pac. R. R. Co. v. Hughes*, 87 Ala. 610, and *The Montgomery & Eufaula R. R. Co. v. Perryman*, 91 Ala. 413, and they are, each overruled.

In the case we try, the plaintiff testified, he had four mules killed and two crippled, on the 20th of August, 1891; that he turned them in a pasture near Green's station, on the line of the defendant's railroad, about 5 o'clock in the afternoon of that day; that the next day, in the afternoon, he found four of them killed and two crippled; that there were two of those killed, on each side of the track, in the ditch that ran on either side, and about ten feet apart; that the two crippled ones were about twenty yards below the dead ones; that the place of the accident was in his pasture, about 400 yards from Green's station on the road; that the track where the mules were killed was straight; that two trains, a passenger and a freight, passed over the road, that night; that those killed were worth $200, each, and the crippled ones were paid for by the company. On this evidence, the plaintiff rested, and under our rulings, we hold, he made such a *prima facie* case, as to require the defendant to rebut the presumption of negligence arising from the fact that the animals were killed by its trains. Authorities *supra*.

It is proper to add, in this connection, as to this case, that the plaintiff introduced evidence in rebuttal, tending to show, that it was about 600 feet from where the mules were killed to the curve, that the curve was a slight one, and not "enough to prevent one seeing along the track, through there."

3. The proof for the defense tended to show,—and it was uncontradicted, except as to the sharpness of the curve,—that three trains passed over the defendant's road, on the night of the 20th of August, 1891. No. 1, under engineer Orr, at about 8 o'clock P. M., No. 2, under engineer Jesse, about one o'clock A. M., and No. 3, some time in the night, but

[Birmingham Mineral R. R. Co. v. Harris.]

which way going, under what conductor, and at what time in the night, is not made known.

Orr testified, that the night was a clear one; that his head-light was a good one, in good repair and such as was in use on well regulated railroads; that it would reveal an object in front of the engine, from 125 to 150 feet, and better on a dark than a clear night; that when he first saw the mules, there were two of them, from 100 to 125 feet in front of the engine, and they were knocked off on the right hand side of the track, going south; that the curve, which was "a right smart curve," was about 175 feet north of where he struck the two mules; that he was keeping a lookout, *as he was approaching the curve;* that he first saw the mules when he had run 25 or 50 feet on the straight track; that he immediately applied the air-brakes and sounded the cattle alarm, but did not reverse the engine before the animals were struck, because after applying the brakes and sounding the alarm, he did not have time to do so; that it was down grade at that point; steam was shut off, and they were rolling down the grade; that he could not have stopped the train, going at the speed they were,—about 20 or 25 miles an hour,—using all the means in his power, including his reverse lever, in a less distance than 200 or 250 yards. His was an excursion passenger train.

Jesse testified, he was engineer, that night, pulling No. 2, a freight train consisting of 22 cars loaded with lime rock, besides a caboose, and passed the place where the mules were injured, about 1 o'clock a. m.; that as he was approaching Green's station, a fourth of a mile north therefrom, he struck a mule, standing on the track, when he first saw it, about 30 feet ahead of him, knocked it off on the right hand side, and his best judgment was, that he killed it; that there was a down grade at that point, and he was rolling down, with steam cut off, at about 25 miles an hour; that his head-light was good, in good condition, and such as were in use on the best regulated railroads; that it would enable one to see objects distinctly, but not so plainly as to tell what they were, at 100 yards off; that there was a curve, 50 yards from where he first saw the mule, and he could not see it till he got round the curve on the straight track, where the head-light could reveal it; that immediately on seeing the animal, he sounded the cattle alarm and applied his steam jam, after first calling for brakes; that he did not reverse his engine, because there was not time in which to do it, after what he had done, before striking the mule; that he had no other means in his power, other than those he did employ, to

avert the injury; that he could not have stopped his train, at the speed he was going and the grade descending, with all the appliances he had, in less than half a mile, and that he was keeping a good look-out, at the time and before he discovered the mule.

4. The plaintiff in this case was guilty of no negligence in allowing his animals to run upon his own pasture grounds or even upon the commons. The owner of domestic animals is not required to fence against a railroad. That duty, as we have held, devolves upon the company; if it would use its privileges and franchises with due regard to the rights and interests of others.

Accordingly, we have recently decided that if a railroad company knowingly runs its trains under such conditions as would make it impossible for those in charge to prevent injuring stock straying on its track, and injury results, it is accountable for the loss. As we then said, "Such is undoubtedly the case, when the train is run, in the night time, at such a fast rate of speed, that by reason of the darkness of the night, stock can not be seen, by the aid of a headlight, in time to prevent the injury, by the use of the ordinary means and appliances with which trains are usually supplied."—*The Central Railroad & Banking Co. v. Ingram*, 95 Ala. 152; *Ala. Gt. S. R. R. Co. v. Jones*, 71 Ala. 487; *M. & C. R. R. Co. v. Lyons*, 62 Ala. 71.

In the case at bar, without dispute, the trains that are known to have killed any of the animals were running in the night time at a speed, each, of from 20 to 25 miles an hour, one a passenger and the other a heavily loaded freight. Each approached and rounded a curve at this rate of speed. Some of the evidence tends to show the curve was slight, not preventing seeing along the track ahead, and some of it,—that of defendant,—that it was too sharp to see ahead until it was rounded. But, whether it was slight or sharp, can make no difference as to the duty to exercise the reasonable care the company owed to plaintiff, as to his mules which were running upon his own grounds. It must be added, however, that the sharper the curve, the greater the care with which the trains, as to their speed, should have been operated, to prevent the liability to encounter obstacles hidden by reason of the curve. Where anything suggests care to avoid peril and damage to others, the higher the duty increases to observe it.

In what has been said, we do not desire to be understood as holding that railroad companies are bound by any principle of law, in the absence of statute or contract requiring,

[Birmingham Mineral R. R. Co. v. Harris.]

to fence their lines against the incursion of live stock on them, and without fencing, that they are liable in such case, for more than the want of reasonable, proper care to avoid the injury.—7 Amer. & Eng. Encyc. of Law, pp. 906, 912; 1 Rover on Railroads, 614; 1 Thompson on Neg. p. 514 § 20.

Having thus settled the principles which must govern the decision of this cause, we may dispose of the questions reserved. We first consider the rulings of the lower court on the evidence offered.

5. The evidence showed the mules were appraised in the presence of the plaintiff, but it does not appear it was done on his demand, nor that the appraisement was in writing,— both as required by statute.—Acts 1888-9, p. 808. Nor was it shown what was said or done by any one at the time. The question propounded to the plaintiff on his cross examination by the defendant, "What were the mules appraised at?" was, therefore, on the objection of the plaintiff, properly disallowed, as calling for *ex parte* and illegal evidence.

6. Defendant's counsel asked the witness, Orr, examined in behalf of defendant, "Did you see the mules, as soon as the light of the engine permitted you to see them?" was improper, if for no other reason, because it ignores the maintenance of a proper look-out by him, at the time. But, the witness's own evidence shows he was running at such a rate of speed as to have made it impossible for him to stop his train, after he might have seen the animals, before running upon them.

7. The court allowed the plaintiff to ask the defendant's witness, Orr, when his train left Oneonta; when it arrived at Birmingham; the distance between the two points; the distance between Oneonta and Boyles, and the number of stops between them; the average duration of these stops, and the time it took to go from Boyles to Birmingham.

The ground of objection was, that the testimony was immaterial unless it was introduced for the purpose of showing that the train was running at a negligent rate of speed, and that it was illegal for this purpose because no rate of speed was negligence of which plaintiff could complain. If the evidence was improperly admitted, on any grounds that might have been urged, it was not for the reason assigned, since the rate of speed was a matter of which the plaintiff could complain.

8. When the defendant's witness, Orr, was being examined touching his report to the company about the occurrence, the plaintiff showed the witness his written report,

and questioned him about its contents. The defendant objected to the plaintiff asking the witness as to the contents of the report, unless he first laid a predicate as to the time and place where the report was made. The objection was properly overruled. There was no merit in it. Being in writing, if the object of the cross-examination was to contradict the witness as to the statements of the report (and such does not appear to have been the object) it was immaterial, for such purpose, to lay a predicate of time and place, when and where, the paper was written.

9. While the plaintiff was cross-examining this witness about said report, defendant handed the witness another report of the same accident, made at another time and place, and asked if he made that report also. Plaintiff objected and the court refused to allow the witness to examine this last report. The request of defendant's counsel for the witness to examine the report was out of time. The witness was being cross-examined by the plaintiff's counsel, and it was within the discretion of the court to disallow the intrusion. The ruling was correct for the further reason, that from aught appearing, it was an *ex parte* document, and not binding on the plaintiff.

10. Defendant's counsel asked witness, Orr, whether or not sounding the cattle alarm and applying the air-brakes were more effective means of saving the cattle (mules) under the circumstances, and at the time of the injury, than reversing the engine would have been. The court sustained an objection to this question.

The witness was an expert, having been a railroad engineer for seven years, and besides, he had testified he sounded the cattle alarm and applied the air-brakes, but did not have time to reverse the engine. It was competent, therefore, to show by him that he did not fail to do that which was best, or equally effective to be done, under the circumstances, to prevent the injury, if it could be done. But, this was error without injury, since this witness shows that all the appliances in his power, at the time, could not have averted the injury, running at the negligent rate of speed he was going.

11. The plaintiff in the rebuttal of one of his own witnesses, was allowed to ask him, against the objection of defendant, "whether there was curve enough to prevent seeing along the track, through there." This was an enquiry as to a visible and certain physical fact, of which, if the witness knew, he could testify. And besides, it was a collective fact.

[Birmingham Mineral R. R. Co. v. Harris.]

12. The defendant excepted to the ruling of the court in allowing plaintiff's counsel, in his argument to the jury, to say: "That the burden of proof was on the defendant to acquit itself of negligence ; that the law was reasonable, because, if it were otherwise, the plaintiff would be compelled to put the defendant's employees on the stand and prove by them their own negligence." We fail to see the impropriety of the remark. If the expression of a legal opinion of counsel, though incorrect, it did not furnish ground for the objection made to it. Besides, a *prima facie* case of negligence having been shown by plaintiff, the remark was a declaration of a correct principle, as held in *S. & N. A. R. R. Co. v. Williams*, 65 Ala. 74.

13. Counsel for plaintiff, against defendant's objection, was allowed also to say in argument to the jury, "Don't you know, gentlemen of the jury, that fast running was the cause of the killing of plaintiff's mules?" The statement was argumentative, and if unsound, it would not do to allow an exception to it, on that account, without opening up, to no profit, a new and vast field of exceptions in the lower courts, for adjudication here. But, from the view we have taken of the case, it would seem that fast running had much, if not all to do with bringing about the destruction of plaintiff's animals.

14. Passing to the consideration of the charges of the court, and applying the principles as heretofore announced to them, we hold, there was no error in that part of the general charge of the court to the jury,—"That after it was shown the plaintiff's mules were killed on defendant's railroad by a moving train, the burden of proof was on the defendant to show, that *it* was not negligent in respect to a look-out."

15. Charges 2 and 3 were properly refused. Each engineer testified that it was impossible, moving at the speed he did, to have stopped the train short of killing the mules, after they could have been discovered on the track. If so, it was negligence for which the company was liable.

Charge No. 4 was Nos. 2 and 3 combined, and was properly refused, for the same reasons they were.

16. Charges Nos. 8 and 13, each, ignores the duty of the engineer to keep a look-out, and not to run his train at a negligent rate of speed.

17. No. 14 ignores the passage of train No. 3 over the road, that night, by which one or more mules may have been killed, the burden being on the defendant to show by what train they were killed; it does not define what reasonable

[Cofer v. Schening.]

diligence in the matter of keeping a look-out is; ignores the rate of speed at which the trains were moving, and is the general charge on the effect of the evidence, improper in this case.

Nos. 15 to 19, inclusive, were charges on the effect of the evidence, and properly refused.

The remaining charges (1, 5, 6, 7, 9, 10, 11, 12 and 20) refused, misplaced the burden of proof, in that they required the plaintiff to show by what train the animals were killed and that the defendant was negligent.

We find no error in the record and the judgment of the court below is affirmed.

Affirmed.