[Central R. R. & Banking Co. of Georgia v. Ingram.]

# Central Railroad & Banking Company of Georgia *v.* Ingram.

*Action for Damages Against Railroad Company for Killing Stock.*

| 98 | 395 |
| 103 | 668 |
| 105 | 356 |
| 98 | 295 |
| 112 | 536 |
| 98 | 395, |
| d121 | 232 |
| 98 | 395 |
| 126 | 367 |

1. *Withdrawing evidence from the jury.*—When a railroad company is sued for negligently killing plaintiff's mules by running over them with its train, and seeks to defend by showing that the injury complained of was caused by a fog produced by the proximity of a creek, and in furtherance of that theory inquired of the conditions, as to fog, at other creeks along the route, and thus elicited testimony unfavorable to the defence, it cannot, as a matter of right, have the evidence withdrawn from the jury.

2. *Negligence in running railroad trains.*—The rules applicable in determining the inquiry as to negligence, *vel non,* in the running of railroad trains, as stated in *M. & G. R. R. Co. v. Lyon,* 62 Ala. 71, and *Ala. G. S. R. R. v. Jones,* 71 Ala. 487, are cited and approved.

3. *Common of pasture.*—Under the system in this State all unenclosed lands are common of pasture. The owners of stock have the right to allow them to go at large upon the commons. It is the duty of the railroad, if necessary to secure it in the safe operation of its road, and not of the owners of stock, to fence against the incursion of stock upon the railroad track.

4. *When railroad guilty of negligence, and responsible therefor.*—If a railroad company knowingly runs its trains under such conditions as renders it impossible for those in charge of them to prevent injury to stock straying upon the track, and such injury results, it ought to be and is held responsible for the loss; especially, when the train is run in the night time at such high rate of speed that stock cannot be seen in time to prevent injury by ordinary means and appliances.

APPEAL from Russell Circuit Court.
Tried before the Hon. J. M. CARMICHAEL.

NORMAN & SON for appellant.—(1). If the testimony of Norris, the engineer, be true, the plaintiff is not entitled to recover.—*Ala. G. So. R. R. v. McAlpine,* 75 Ala. 113; *Ib. v. Roebuck,* 76 Ala. 113; *Ga. Pa. Rwy. Co. v. Hughes,* 87 Ala. 610. (2). The burden is on the plaintiff to show the negligence of the defendant, railroad company.—87 Ala. 610. (3). The affirmative charge was in writing, and should have been given as asked by the defendant.—*Long v. McDougald,* 23 Ala. 413; *Belisle v. Clarke,* 49 Ala. 98; *Hall v. Posey,* 79 Ala. 89; 81 Ala. 381; 87 Ala. 309. (4). Evidence of the non-existence of fog, or conditions to produce it, elsewhere, should have been excluded.—*Pool v. Devers,* 30 Ala. 672; *Bush v. Jackson,* 24 Ala. 273; 28 Ala. 110; 29 Ala. 244.

[Central R. R. & Banking Co. of Georgia v. Ingram.]

THOS. H. WATTS, for appellee.—(1). The affirmative charge asked for the defendant was properly refused. Such charge should not be given if the evidence is in conflict, or if the jury may fairly and legitimately draw inferences from it contrary to the rights of the party asking the charge.—3 Brick. Digest, p. 110, §§ 52–5; *Luke v. Calhoun*, 52 Ala. 115; *Chandler v. Josl*, 96 Ala. 596. (2). There was no dispute as to the killing of the mules by the defendant's train. This put the burden upon the defendant to show that the killing occurred from no fault on its part, or create the presumption that it arose from the negligence of the defendant.—*R. R. Co. v. Bayliss*, 74 Ala. 150. The court could not have given the charge without invading the province of the jury.—*R. R. Co. v. Lyons*, 62 Ala. 71. (3). All other assignments of error are based on the idea that the evidence of the conditions favorable or otherwise to the formation of fog at other creeks along the route was illegal and irrelevant. All this testimony tended to show that the conditions at these other places were equally favorable with that at which the killing of the stock occurred, for the formation of fog, and if there were no fog at these other places, it tended to contradict the testimony of the engineer as to the existence of fog as the cause of the killing of the mules sued for.

HEAD, J.—Appellant's train, on the morning of November 21st, 1890, at about 3:30 o'clock, encountered on the track, sixteen of appellee's mules; ran over them and killed thirteen, and fatally injured the rest. The engineer gave, as an excuse for running over them, that it occurred at Dry Creek, where a heavy fog then prevailed which obscured his vision and rendered it impossible to see the mules until he was so near them that preventive effort was impossible. The prevalence of fog was controverted by the plaintiff. The engineer was the only witness who testified to it, and he further testified that there was none at any of the other creeks he crossed that morning in that section, except at Uchee Creek; that he saw no fog at any place, that morning, except Dry Creek, where the mules were killed, and Uchee. The defendant, for the purpose of showing the existence of conditions at Dry Creek favorable to the formation of fog, examined a witness on the subject, but he testified, that the land has a clay soil west of the trestle; that the trees on the edge of the creek were about twelve feet high, and on either side of the right of way, were a great many small pine trees about ten feet high; that, in November, the land had been cleared up and was in culti-

vation, on each side, near the creek, and was dry clay soil and there was but little water in the creek. At this point, the defendant examined the witness as to the conditions at Hatchechubbee creek crossed by the railroad about a mile from Dry Creek, and also two other streams several miles from Dry Creek crossed by the road, at all of which, the engineer had said there was no fog that morning; and the witness testified that, at Hatchechubbee, there was a considerable volume of water, and more trees and timber and more moisture than there was at Dry Creek, and that the same is true as to the other two creeks inquired about. The defendant then moved to "withdraw from the consideration of the jury, as evidence, all of the testimony of the witness; and all the witness had said as to the volume of water, the trees and timber at Hatchechubbee Creek and its distance from Dry Creek," on the grounds, 1st, that it is irrelevant, 2nd, illegal and 3rd, that the evidence did not tend to show there was no fog at Dry Creek, at the time of the injury. The court refused the motion and the defendant excepted. There was no error in this ruling. A party can not voluntarily elicit testimony, and, finding it unfavorable to him, ask, as matter of right, to have it excluded. The law does not allow one thus to speculate. Following the line marked out by the defendant, the plaintiff, in rebuttal, examined several witnesses touching the conditions, favorable or unfavorable to fog, at Dry Creek and the other Creeks crossed by the train that morning. A witness, after testifying that he was acquainted with the Creek just beyond and east of Blackman's crossing, which is about five and one half miles from Dry Creek, was asked the nature of the soil at that creek, and defendant excepted to the overruling of its objection to the question. The answer was that it was clay soil. The witness was then asked by plaintiff the quantity of water and the trees and timber at the creek just beyond Blackman's crossing, as compared with Dry Creek, and defendant excepted to the overruling of its objection to this question. The answer was, "there is less water and timber in Dry Creek, and less moisture and less timber near the banks of Dry Creek, than there is at High Log Creek, two miles west of Dry Creek, or on the creek at Blackman's crossing and Hatchechubbee Creek. There was no motion to exclude any part of the answer as not being responsive. We think the introduction of this testimony was justified by the course defendant had pursued. Moreover, we are of opinion that evidence showing equal, or more favorable conditions for the formation and prevalence of fog at

other places, in proximity to the place of injury, and at which the evidence shows there was none, is relevant and admissible as tending to show there was none at the place of injury. *Railroad Co. v. Ingram*, 95 Ala. 152. The method of proving these facts by showing the conditions of other streams, as compared with Dry Creek, was, as we have seen, inaugurated by the defendant, and it can not complain.

The only other assignment of error arises upon the refusal of the court to give the general affirmative charge in favor of the defendant. As we have seen, there were sixteen mules on the track. There is evidence tending to show they were scattered to some extent along the track for a considerable distance. The track was straight, approaching the place, for more than a mile. It was a cloudless, starlit night. The train was running from sixteen to twenty miles per hour. The head-light cast a light on the track about forty yards ahead of the engine, and not far enough to enable the engineer to perceive an object on the track in time to avoid striking it. The engineer testified, also, that, in his opinion, he could not have seen the mules in time to avoid the injury if there had been no fog. The engineer was on diligent lookout for obstructions, at the time, and did not see the mules until he was so near them that preventive effort was impossible. These facts are shown without dispute. Under the evidence, in reference to the excuse predicated upon the existence of fog, it was for the jury to determine, first, whether fog existed or not, and, second, if it did, whether it was the cause of the injury; hence, in considering the propriety of the court's ruling refusing the general charge requested, that matter must be left out of view. The real inquiry then is, is the defendant exculpated by the fact that the mules could not be discovered in time to prevent the injury, on account of the ordinary darkness of the night? It is most manifest that if there was no fog, and the occurrence had been in daylight, the mules could have been seen in time to stop the train.

In *M. & C. R. R. Co. v. Lyon*, 62 Ala. 71, the injury to the mule occurred at night, and, with a perfect headlight which was then being used, the engineer could not see the mule at a greater distance than thirty yards. At the speed the train was running it was impossible to stop within less than forty yards. Upon the contention that the company was, as matter of law, guilty of negligence on this state of facts, this court said: "Those who employ the tremendous yet easily controllable power of steam engines

on railroads must be vigilantly careful to avoid committing with them, the destruction they are capable of effecting; and due care to this end, is not observed when a train is run thereon at such speed that it can not be stopped within the limit at which the engineer can plainly see upon a straight track an object of the size of a man or a young mule thereon.

In *A. G. S. R. R. Co. v. Jones*, 71 Ala. 487, the principle was again recognized, with the qualification that the company may be excused when, from unknown causes, the machinery and appliances have, in the course of travel, become defective, or when natural causes intervene which render it inefficient, whereby injury was caused; and it was said that if from fog, or driving rains or snow the light cast from a proper headlight was obscured, the running of the train with reasonable care, in view of that circumstance, could not be deemed negligent.

We think the rule of these decisions is a just application of the maxim *sic utere tuo, ut alienum non lædas.* Under the right of eminent domain the railroad company is empowered to appropriate the lands of others to the construction and operation of its road. It may locate its line of road through the farms and pastures of their owners as well as the uninclosed commons of the country. Under our system all uninclosed lands are common of pasture. The owners of stock have the right to suffer them to go not only within their own enclosures but upon the commons. There is no principle which would require the stock owner to fence against the railroad. That duty, if necessary to secure the railroad company the proper enjoyment of its property and franchises, with due regard to the rights of others, would devolve upon the company itself, and not the stock owner. We are of opinion that if a railroad company, knowingly, runs its trains under such conditions as render it impossible for those in charge of them to prevent injury to stock straying upon the track, and such injury results, it ought to be held responsible for the loss. Such is undoubtedly the case when the train is run, in the night time, at such fast rate of speed that, by reason of the darkness of the night, stock can not be seen by the aid of the headlight in time to prevent injury by the use of the ordinary means and appliances with which trains are usually supplied. We do not mean to detract from the qualification of the rule expressed in *A. G. S. R. R. Co. v. Jones, supra.* If the injury is not attributed to the rate of speed, in view of the ordinary darkness of night, but resulted from intervening unusual natural

[South & North Ala. R. R. Co. v. Highland Av. & Belt R. R. Co.]

causes, such as fog or falling rain or snow, those in charge of the train being, in all other material respects, in the exercise of due care, the injury would be excused.

It results from what we have said that the general charge was properly refused, and the judgment of the Circuit Court must be affirmed.

Affirmed.