[Louisville & Nashville Railroad Company v. Kelton.]

since no judgment went against him below, but, to the contrary, the judgment there was in his favor. We know of no exception to the rule that when errors injurious to some of the appellants only are assigned by them all jointly, they are not available to work a reversal, and will not be considered by the court.—*Kimbrell v. Rogers*, 90 Ala. 339 ; *Rudulph v. Brewer*, 96 Ala. 189 ; *Beachman v. Aurora Silver Plate Mfg. Co.*, 110 Ala. 555.

The judgment of the circuit court must be affirmed. Affirmed.

# Louisville & Nashville Railroad Company v. Kelton.

*Action against a Railroad Company to recover Damages for Killing a Horse.*

1. *Negligence; liability of railroad company for killing stock.*—It is negligence in a railroad company to run its trains in the night time at such a rate of speed that it is impossible, by the use of the ordinary means and appliances to stop the train and prevent injury to stock within the distance in which the stock upon the track could be seen by the aid of the head-light on the engine, and if injury results from such negligence, the railroad company is liable to the owners therefor.

2. *Action against railroad company; charge to the jury.*—In an action against a railroad company to recover damages for the alleged negligent killing of a horse, it is error for the court to instruct the jury "If you believe from the evidence that the animal mentioned in plaintiff's complaint was the property of the plaintiff, that it had wandered on defendant's track, that it was killed by defendant's train, that at the time of the killing the defendant was knowingly running its train at such a fast rate of speed, that by reason of the darkness of the night the animal could not be seen by aid of the head-light of the train in time to prevent injuring it, by the use of the ordinary means and appliances with which trains are usually supplied, then your verdict must be for the plaintiff;" such charge being faulty in ignoring all causal relation between the negligence set out therein and the injury complained of.

3. *Same; negligent running of trains.*—It is negligence for a railroad company to run its trains so close together that the one in front can not stop to avoid injury to animals on the track for fear of a collision ; and in an action against a railroad company to recover for alleged

negligent killing of stock, a charge is properly given which instructs the jury that "If you believe from the evidence that another train was following the train which killed the animal in question, at a distance which made it dangerous for the engineer, Bishop, to stop his train before striking it, and that the engineer did not stop his train on that account, and that this contributed to the injury of the animal, then this was negligence on the part of the defendant."

APPEAL from the Circuit Court of Blount.

Tried before the Hon. JAMES A. BILBRO.

This was an action brought by the appellee, Henry Kelton, against the Louisville & Nashville Railroad Company, to recover damages for the alleged negligent killing of a horse, which was the property of the plaintiff.

The evidence introduced showed that the horse was killed by a train of the defendant, and that it was dark at the time of the accident. The engineer, who was on the engine which ran over and killed the plaintiff's horse, testified that the accident occurred at about 8 o'clock at night, while the train was running at a rate of about 30 miles an hour; that he had a good head-light on the engine and good brakes, such as were generally used on well regulated railroads, and that he could see by the aid of his head-light about 200 feet ahead of his engine, but that he could not stop his engine in that distance at the rate of speed he was going; that just as he crossed a bridge which spanned the Warrior river, he saw an object on the track, but could not tell what it was; that he immediately shut off his steam, but by that time he had run over it, and that he did not try to stop his train by other means than by shutting off the steam, because he had run over the object before any other effort could be made.

Upon the introduction of all the evidence, the court in its general oral charge instructed the jury as follows: (1.) "If you believe from the evidence that the animal mentioned in plaintiff's complaint was the property of the plaintiff, that it had wandered on defendant's track, that it was killed by defendant's train, that at the time of the killing the defendant was knowingly running its train at such a fast rate of speed, that by reason of the darkness of the night the animal could not be seen by aid of the head-light of the train in time to prevent injuring it, by the use of the ordinary means and appli-

ances with which trains are usually supplied, then your verdict must be for the plaintiff." (2.) "It is the duty of railroad companies to use such head-lights on their trains when they run them at night, or run their trains at night at such rate of speed, as will enable the engineer to stop them within the distance in which he can see stock that may be on the track by the aid of the head-light he uses." (3.) "If you believe from the evidence that another train was following the train which killed the animal in question, at a distance which made it dangerous for the engineer, Bishop, to stop his train before striking it, and that the engineer did not stop his train on that account, and that this contributed to the injury of the animal, then this was negligence on the part of the defendant." To the giving of each of these portions of the court's general charge the defendant separately excepted.

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. JONES, for appellant.—1. The decision in the case of *Central R. R. & Banking Co. of Georgia v. Ingram*, 98 Ala. 399, should be overruled. The ordinary rate of speed at night can not be made negligence under any rule of the common law. It is necessary in the prosecution of a lawful calling, essential to the wants of the people, not dangerous in itself, and required for the proper enjoyment of the railroad franchises and the duties they owe the people, and maintained by all prudent railroad managers everywhere in the civilized world. No one can complain of it.—*Watson v. Memphis & Char. R. R. Co.*, 75 Ala. 312.

2. The court is bound, judicially, to know the manner of operating railroads, so far as concerns the speed with which trains are run in the night time, as well as the day time, and the mechanical appliances for lighting up the track in front of engines.—*Brown v. Piper*, 91 U. S. 42; *Solomon v. State*, 28 Ala. 83; *Luke v. Calhoun County*, 52 Ala. 115; 5 Mo. Appeal Cases, 347. It is bound to know, therefore, that no locomotive head-light has yet been invented that will enable trains, which are run at the usual rate of speed, common and

indispensable to the proper conduct of commerce, to be stopped within the distance in which an animal can .be seen ahead of the engine; and, also, that to conform to such a rate of speed would destroy the commerce of the country, and practically defeat the great object for which railroads are chartered. In order to obey the court's police regulation, railroads with the present head-light, would have to run passenger trains at the slow speed of about ten miles per hour, and freight trains with hand brakes at about four miles per hour. It is unnecessary to inquire what would become of the vast interests dependent upon the railroads, to say nothing of the railroads themselves, if such a regulation were obeyed. It is a practical destruction of the franchises of the railroads, and void for that reason.—*Zeigler v. Railroad Co.*, 58 Ala. 594; *Joseph v. Randolph*, 71 Ala. 499. It is relegating the use of railroads to the infant stages of that mode of transportation, when trains ran only in the day time, and compelling them to adopt a rate of speed utterly unadapted to our present civilization and the thousand wants of the people dependent on *speedy* transit. The common law is always plastic enough to respond to the conditions, customs and wants of the people, among whom it is enforced.

3. The rule declared in Ingram's case stands solatary and alone in American jurisprudence. Everywhere else, it is held, "if the exigencies of the business require rapid transit, railroad companies are not required to refrain from it because of increased danger to stock."—43 Miss. 233; 46 Miss. 373; 19 Penn. State, 278; *Winston v. Raleigh & Gaston R. R. Co.*, 90 N. C. 66. It is also directly opposite to the principle declared by this court in case of fire from the operation of trains, and injury to persons and property in all other cases.—*Railroad Co. v. Reese*, 85 Ala. 497; *L. & N. R. R. Co. v. Stanton*, 91 Ala. 382. It is also a reversal of the rule established and upheld with deliberation by this court in *A. G. S. Railroad Co. v. McAlpine*, 75 Ala. 113.

No counsel marked as appearing for appellee.

HEAD, J.—In *Central Railroad & Banking Co. v. Ingram*, 98 Ala. 395, following the former cases of *M. & C. R. R. Co. v. Lyon*, 62 Ala. 71, and *A. G. S. R. R. Co. v.*

[Louisville & Nashville Railroad Company v. Kelton.]

*Jones*, 71 Ala. 487, we ruled that a railroad company injuring stock by the running of its train in the night-time at such rapid rate of speed that it is impossible, by the use of ordinary means and appliances, to stop the train and prevent the injury, within the distance in which the stock upon the track could be seen by the aid of the head-light was guilty of negligence, which, if it caused the injury, entitled the owner to recover. That decision has been followed in several cases.—*L. & N. R. R. Co. v. Gentry*, 103 Ala. 638 ; *L. & N. R. R. Co. v. Davis, Ib.* 661 ; *B. M. R. R. Co. v. Harris*, 98 Ala. 326 ; *L. & N. R. R. Co. v. Cochran*, 105 Ala. 354. We are now asked to reconsider and change that ruling. We have again considered it, and perceive the force of the elaborate and able argument of appellant's counsel, but we are satisfied that the rule declared is right and decline to disturb it.

We think, however, that the first oral instruction of the court to which exception was reserved, while hypothesizing facts which constitute negligence within the rule of *Ingram's Case*, was faulty in ignoring all causal relation between such negligence and the injury. If that negligence did not cause the injury, plaintiff, of course, could not recover on account of it. The instruction should have submitted that question to the jury.

The second and third oral instructions were free from error.

For the error in giving the first oral instruction, the judgment is reversed and the cause remanded.

Reversed and remanded.