# Alabama Midland Railway Co. *v.* McGill.

## Action Against Railroad for Killing Stock.

1. *Negligence in railroad company, what is in running train at night.*—It is negligence in a railroad company to run its trains in the night time at such rate of speed that it is impossible by the use of ordinary means and appliances to stop the train within the distance in which stock on the track can be seen by the aid of the headlight; and if injury results from such negligence the company is liable to the owner of the stock killed or injured.

2. *Same; duty of care increases with increase of demand for it.* The duty to exercise care in the management of a railroad train increases as the conditions and circumstances suggest a demand for increase of care.

3. *Same; when general charge for plaintiff proper in case of.*—In a
suit against a railroad company for killing stock, where the
undisputed facts were that a heavy train was run on a down
grade at the rate of forty-five or fifty miles an hour, in a dark
and foggy night, when by aid of the headlight the engineer
could not see ahead of him more than forty yards, and when
he did see the stock it was impossible to stop the train; that
on a clear night the engineer could see ahead one hundred
yards, but it did not appear he could have stopped the train
within that distance; that he did not check the speed of the
train because of the unusual conditions, the general charge in
favor of the plaintiff was properly given.

APPEAL from the Circuit Court of Dale.

Tried before Hon. J. M. CARMICHAEL.

James C. McGill sued the Midland Company to re-
cover damages, alleged by him to have been caused by
the negligence of the company in running its train.
Plea was the general issue. The evidence sufficiently
appears in the opinion. There was verdict and judg-
ment for the plaintiff. The defendant appealed and as-
signed as error the refusal of the general charge to the
defendant.

A. A. WILEY, for appellant, cited, *Central Railroad
& Banking Company v. Ingram*, 95 Ala. 152.

O. C. DOSTER, *contra*, cited, *South & North Alabama
Railroad Co. v. Bees*, 82 Ala. 340; *Birmingham Mineral
Railroad v. Harris*, 98 Ala. 326; *Louisville & Nashville
Railroad Co. v. Davis, et al.*, 103 Ala. 661.

HARALSON, J.—Action against a railroad company
for negligence in killing stock.

1. The principle is too well established to be longer
questioned in this court, that it is negligence in a rail-
road company to run its trains in the night time at such
a rate of speed that it is impossible, by the use of ordi-
nary means and appliances, to stop the train within the
distance in which the stock upon the track can be seen
by the aid of the head-light on the engine and prevent
injuring them, and if injury results from such negli-
gence, the railroad company is liable to the owner there-

of.—*Louisville & Nashville R. R. Co. v. Kelton,* 112 Ala. 533, and our cases there cited.

2. The engineer testified that he was runing at the time of the accident, forty-five or fifty miles an hour, which was his usual speed; that it was about 10 o'clock p. m. when it occurred; the night was very dark and foggy; that he was keeping a sharp lookout; that the road is straight for about three hundred yards west of the trestle where the animals were killed, and there was a wall of fog at that point which prevented his seeing anything more than forty yards ahead of his train; that on an ordinary night, he could have seen one hundred yards ahead of him, and after doing all he could, it was impossible to stop the train after discovering the animals before he ran on them. He also testified that the road ran down Claybank creek for several miles, and that the fog was all along through the swamp of the creek, and at the particular point where the mule and horse were killed, there was a dense wall of fog which prevented his seeing for more than forty yards ahead of him. It was also shown that the track at this point, the way the train ran, was down grade.

3. On these facts, counsel for defendant seek to have this case taken from the rule laid down in the cases referred to above, on what was said in *Ingram's* case, 98 Ala. 399,—that "if the injury is not attributed to the rate of speed, in view of the ordinary darkness of the night, but resulted from the unusual natural causes, such as fog, or falling rain or snow, those in charge of the train being, in all other respects in the exercise of due care, the injury would be excused." But, the defendant is not relieved from liability from anything said in that case, as applicable to the facts here. It is a well settled and just principle, that where anything in the surrounding conditions and circumstances suggests care in the operation of a railroad train to avoid peril and damages to others, the higher the duty increases to observe it.—*B. M. R. R. Co. v. Harris,* 98 Ala. 334. Here, as the undisputed facts show, the train was being run at its usual speed of 45 or 50 miles an hour; that it was a dark and foggy night, and the fog was all along through Claybank swamp through which the train was

running, up to the point of the accident, without any slow-up, notwithstanding the fact, that the engineer could not see animals ahead of him more than 40 yards. It was not shown that the fog was denser or more impenetrable at the point of accident, than along the road for miles before the accident occurred. The fact stated by the engineer, that at that particular point there was a dense wall of fog which prevented his seeing more than 40 yards ahead of him, does not establish its prevalence at that point in a denser form than at other places. Common prudence would have suggested the duty on the part of the engineer to run his train at a rate of speed, and to have his train under such control, as to stop it within the distance his head-light would reveal an object on the track ahead of him the size of a horse or mule. Instead of this, he plunged along at this very great and apparently reckless rate of speed, as though the conditions were not unusual. Peril to the train itself, the passengers on it and stock that might be on the track was thereby necessarily, and for aught appearing, very greatly enhanced. Moreover, the engineer testified that his train was a very heavy one, consisting of five or six coaches,—a mail car, two passenger and an express car and one or two sleepers. It was not shown that the train could have been stopped within a hundred yards, the distance the engineer testified he could have seen ahead of him on an ordinary night by the aid of the head-light. It thus appears, that independent of the fog, and if it had been a clear night, he might not have been able to save the animals, and was, as for the animals on the track, guilty of negligence in running the train. The court did not err in giving the general charge for plaintiff, and refusing the like charge in favor of the defendant.

Affirmed.