# Louisville & Nashville R. R. Co. *v.* Fox.

*Injury to Animals.*

(Decided June 30, 1914.   65 South. 917.)

1. *Railroads; Injury to Animals; Proximate Cause.*—Where the
animals were struck and injured by defendant's train at night, the
injury could not be attributed to an intervening cause, as that it was
raining at the time, which obscured the vision of the engineer, or
other operatives of the train; it appearing that the train was being
run at such a speed that it could not have been stopped within the
distance in which the animals could have been seen at night if it had
not been raining.

2. *Same; Construction of Roadbed; Negligence.*—The injuring of
animals due to their being on defendant roadbed at a place which,

because of the plan adopted in the construction of the roadbed, such a rate of speed was necessary that the train could not be stopped within the distance objects ahead could be seen, constituted actionable negligence, in the absence of testimony that free access of the animals to the roadbed could not have been prevented by the erection of proper fences, stock-gaps, etc.

APPEAL from Limestone Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by Coleman S. Fox against the Louisville & Nashville Railroad Company for damages for killing animals. Judgment for plaintiff, and defendant appeals. Affirmed.

The charge refused to defendant was the affirmative charge, and that given for plaintiff was the affirmative charge to find for plaintiff.

SANDERS & THACH, for appellant. The defendant was entitled to the general affirmative charge. Where injury resulting to stock from the running of trains at night, is not attributable to the rate of speed in view of the darkness of night, but results from intervening, unusual and natural causes, those in charge of the train being in all material respects in the exercise of due care, there is no liability.—*Memphis and Charleston R. R. Co. v. Lyon,* 62 Ala. 71; *Ala. Great Southern Railway Co. v. Jones,* 71 Ala. 487; *Central Railway and Banking Co. v. Ingram,* 95 Ala. 152; S. C., 98 Ala. 395. The plaintiff was not entitled to the general affirmative charge. The plaintiff is entitled to the affirmative charge for injury to stock from the running of trains at night, only where the track is straight, and the view is unobstructed, and in the absence of unusual natural causes from which injury results, such as are disclosed by the evidence in this case.—*Ala. Midland Ry. Co. v. McGill,* 121 Ala. 230; *L. & N. R. R. Co. v. Kelton,* 112 Ala. 533; *L. & N. R. R. Co. v. Davis,* 103 Ala. 661; *Sou.*

*Ry. Co. v. Hoge,* 37 South. Rep. 439; *Hoge v. Sou. Ry. Co.,* 41 South. Rep. 425; *Anniston Electric and Gas Co. v. Hewitt,* 36 South. Rep. 39. If the defendant was not entitled to the general affirmative charge, the question was one of negligence, which should have been submitted to a jury. Where facts are disputed, or if not disputed, the question of negligence is an inference which as mere matter of discretion and judgment may or may not be drawn from them, the question must be submitted to a jury.—*Memphis and Charleston R. R. Co. v. Lyon,* 62 Ala. 71; *Ala. Great Southern Railway Co. v. Jones,* 71 Ala. 487; *State v. Houston,* 83 Ala. 364; *Wilson v. L. & N. R. R. Co.,* 85 Ala. 271; *Hoge v. Sou. Ry. Co.,* 41 South. Rep. 425.

W. R. WALKER, for appellee. "When any stock is killed or injured by the locomotive or cars of any railroad, the burden of proof, in any suit brought therefor, is on the railroad company to show there was no negligence on the part of the company or its agents."—Code of Ala. 1907, sec. 5476; *So. R. R. Co. v. Penney,* 164 Ala. 188; *Ex parte So. Ry. Co.,* 61 South. Rep. 881; *Birmingham Mineral R. R. Co. v. Harris,* 98 Ala. 326-334. "It is negligence in a railroad company to run its trains in the nightime at such a rate of speed that it is impossible, by the use of ordinary means, appliances, to stop the train within the distance within which the stock on the track can be seen by the aid of the head-light on the engine and prevent injuring them, and, if injury results from such negligence, the railroad company is liable to the owner thereof."—*Ala. Midland Ry. Co. v. McGill,* 121 Ala. 230; *Louisville and Nashville R. R. Co. v. Kelton,* 112 Ala. 533; *Birmingham Mineral R. R. Co. v. Harris,* 98 Ala. 326-334; *Central R. R. Banking Co. v. Ingram,* 98 Ala. 395, 399; *M. & C. R. R. Co. v. Lyon,* 62 Ala. 71; *A. G. S. R. R. Co. v. Jones,* 71 Ala. 487; *So. Ry. Co. v.*

*Hoge,* 131 Ala. 351; *Western Ry. of Ala v. Mitchell* 148 Ala. 35-44. "Questions of negligence and casual connection are usually questions for the jury, but where the standard of care is prescribed by the law, or all reasonable inferences to be drawn are one way, the question becomes one for the court."—*A. G. S. R. R. Co. v. Jones,* 71 Ala. 487-495; *M. & C. R. Co. v. Lyon,* 62 Ala. 71; *A. G. R. Co. v. McAlpine,* 75 Ala. 115. "Where the evidence without conflict establishes the plaintiff's right to recover, the affirmative charge may be given by the court when requested thereto, in writing, by the plaintiff.—*A. G. S. R. Co. v. Jones,* 71 Ala. 487.

WALKER, P. J.—The appellant's track curves as it approaches from the north on a sharply ascending grade the trestle upon which appellee's animals were when they were struck by the engine coming from that direction, with the result that they could not be seen at night by the aid of the head-light until the engine was about 100 feet from them. The train was running at a speed which rendered it impossible to stop it within that distance. It was necessary to maintain a high rate of speed at that point in order to move the train up the heavy grade and over the hill which was just beyond the trestle. A contention of the appellant's counsel is that the state of facts mentioned renders inapplicable to this case the rule which declares it to be negligent to run a train in the nighttime at such a rapid rate of speed that it is impossible, by the use of ordinary means and appliances with which trains are usually supplied, to stop the train and prevent injury within the distance in which stock can be seen by the aid of the head-light (*Louisville & Nashville R. Co. v. Kelton,* 112 Ala. 533, 21 South. 819; *Alabama Midland Ry. Co. v. McGill,* 121 Ala. 230, 25 South. 731, 77 Am. St. Rep. 52), and brings

the case within the influence of the exception to that rule which is recognized as prevailing when the injury is not attributed to the rate of speed, in view of the ordinary darkness of night, but results from intervening unusual natural causes, such as fog or falling rain or snow, when those in charge of the train are exercising due care under the conditions confronting them (*Central Railroad & Banking Co. v. Ingram,* 98 Ala. 395, 12 South. 801; *Memphis & Charleston R. R. Co. v. Lyon,* 62 Ala. 71).

The injury cannot be attributed to the fact that it was raining at the time, as the train was running at such a speed that it could not have been stopped within the distance in which the animals could have been seen at night if it had not been raining. The inability to avoid injuring the animals was due, not to the fact that falling rain obstructed the view of objects ahead, but to the fact that the grade and structure of the track were such that so high a rate of speed had to be maintained in that locality to enable the train to go over the hill beyond the trestle that the train could not be stopped within the distance in which objects on the trestle could be seen at night from an approaching engine.

In other words, in that particular locality the operation of a train at night was under such conditions as rendered it impossible for those in charge of it to prevent injury to stock straying upon the track. If such a speed had to be maintained there that injury to stock straying upon the track could not be avoided by stopping the train after the stock could be seen, the maintenance of such speed was none the less negligent if available means of excluding stock from that part of the defendant's right of way were not adopted. The situation was such a one as was suggested in the following statement made in the opinion delivered in the case

of *Central Railroad & Banking Co. v. Ingram, supra*:

"Under our system all uninclosed lands are common of pasture. The owners of stock have the right to suffer them to go not only within their own inclosures but upon the commons. There is no principle which would require the stock owner to fence against the railroad. That duty, if necessary to secure the railroad company the proper enjoyment of its property and franchises, with due regard for the rights of others, would devolve upon the company itself, and not the stock owner. We are of opinion that if a railroad company knowingly runs its trains under such conditions as render it impossible for those in charge of them to prevent injury to stock straying upon the track, and such injury results it ought to be held responsible for the loss."

This statement evidences the recognition by the court of the correctness of the proposition that, when a railroad company so constructs or maintains a part of its track that the use to which it is put involves a disregard for the safety of stock of others that may stray upon that part of the right of way, it assumes the duty of adopting appropriate measures to prevent such stock having access to a place of such obvious and unavoidable danger, and that it is chargeable with negligence if the danger is incurred without anything having been done to obviate it. A construction of the roadbed which calls for the maintenance of a high rate of speed to enable the train to be kept moving may also call for precautions that may not be required where such a rate of speed may be maintained that the train may be stopped within the distance in which obstacles ahead are discoverable. Knowingly running a train over a part of a track, from which most, if not all, animals could be excluded by fences and stock-gaps, at such a rate of speed that injury to such of them as may happen to be

in the way of the train cannot be avoided, does not stand on the same footing as the operation of a train under the conditions resulting from the intervention of unusual natural causes, such as the presence of a heavy fog or a downpour of rain or snow. In the one case appropriate preventive measures would probably keep out of the zone of unusual danger animals likely to be imperiled, while in the other case the danger is the result of unusual natural causes that could not have been foreseen or adequately provided against. The injuring of an animal due to its being on the track at a place at which, because of the plan adopted in the construction of the roadbed along there, such a rate of speed must be maintained that the train cannot be stopped within the distance in which objects ahead can be discovered, is not in the same category as a similar injury which is attributable to an unusual natural condition prevailing at the time which makes it impossible for the engineer to see an obstacle on the track in time to avoid a collision with it. A railroad proprietor may be responsible for an injury due to a danger resulting from the way the road was built and is used, when he would not be liable for a similar injury which is attributable to the existence of exceptional conditions brought about by the operation of natural causes. When the defendant showed that the place at which the animals were killed in the nighttime was one where the train had to be run at such a rate of speed that it could not be stopped within the distance in which objects on the track could be seen at night by one on the engine, it showed that it was chargeable with negligence in so running the train at such a time and place, unless it was further made to appear that free access of the animals to that part of the right of way could not have been prevented by the exercise of proper diligence by a proprietor of it who had to use

it in that way but who, at the same time, was duly regardful of the rights of others. The evidence showed that at the place in question the train had to be run at such high speed that it could not be stopped within the distance in which an object on the track could be seen from the locomotive at night, but it did not show that the defendant was free of negligence in exposing wandering livestock to the perils incident to the maintenance in the nighttime of such a high rate of speed in the operation of the train. On the contrary, a necessary inference from the undisputed evidence was that, as to animals running at large as the plaintiff's were, the operation of the train which knocked them off the trestle was negligent. The case is not put beyond the influence of the rule first above mentioned by the evidence showing merely that, at the place in question a rate of speed had to be maintained which prevented the stopping of the train after an obstacle ahead was discoverable if it fails to show that the incurring of such exceptional danger was not avoidable by the exercise of due diligence on the part of the proprietor of the railroad. It follows that the court did not err in giving the charge requested by the plaintiff or in refusing the one requested by the defendant.

The suggestion is made in argument that the evidence was such as to afford support for an inference that before the animals were struck by the train one or both of them had been injured in the attempt to go over the trestle, and that this phase of the evidence was a matter for the consideration of the jury in determining the amount of damages to be awarded. It is enough to say of this suggestion that no ruling of the court on the phase of the case which is referred to is presented for review. The only rulings which have been assigned as errors are those on the two written charges above men-

[Wilson v. Lewis.]

tioned. The plaintiff was entitled to recover something if the jury believed the evidence; as the undisputed evidence·was to the effect that his animals were knocked from the trestle as a result of the operation of the defendant's train in a way which, in the circumstances disclosed, was negligent.·

Affirmed.