[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 356 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 357 
David D. Zielke purchased a used Oldsmobile Cutlass Calais automobile from an automobile dealership in 1989, entering into an installment sales contract with the dealership. Among other things, the contract required Zielke to make 42 monthly payments and to maintain insurance coverage on the automobile. AmSouth Bank, N.A. ("AmSouth"), purchased the contract from the dealership. Although Zielke had made payments on the contract, he did so in an untimely fashion and usually after receiving telephone calls and letters demanding payment. Contrary to the contract, he had failed to provide insurance on the automobile; AmSouth, therefore, purchased insurance and increased Zielke's monthly payments to cover the cost of that insurance.
Zielke stopped making payments altogether in December 1990. On or about February 27, 1991, AmSouth field representative Jim Sigler telephoned Zielke's mother and inquired about her son's whereabouts. Sigler did not, during this conversation, acquire the information he had sought. Sigler later located Zielke's place of employment and went there on March 25, 1991, accompanied by a tow truck driver; however, when they arrived, the automobile was not there. Sigler spoke to Zielke, who stated that the automobile had had engine trouble and was at a local mechanic's house, where, he said, the mechanic had replaced the malfunctioning original engine with a used engine. During this conversation, Sigler promised that, before repossessing the automobile, he would give Zielke time to make all delinquent payments on the account. The amount of time is in dispute. Sigler testified that he had given Zielke until noon on the following day; Zielke testified that Sigler had given him until March 29, 1991.
Sigler went to the mechanic's house the following morning and, because Zielke had not tendered payment by noon, repossessed the automobile and had it taken to a local car dealership where AmSouth stored repossessed automobiles. The following week, Zielke received a letter notifying him that in 10 days AmSouth would sell the automobile at a private sale unless it was redeemed by him. Zielke did not attempt to redeem the automobile. The dealership where the car had been stored purchased the automobile from AmSouth for $2,300. AmSouth notified Zielke that the automobile had been sold and demanded that he pay the deficiency balance owed on the contract; Zielke refused.
AmSouth sued Zielke for breach of the contract, seeking damages in the amount of the deficiency. Zielke answered, stating that he reserved the right to file a counterclaim seeking damages in excess of the jurisdiction of the district court. By agreement of the parties, the district court entered, without prejudice, a consent judgment against Zielke. Zielke appealed to the circuit court.
In the circuit court, Zielke answered AmSouth's complaint and counterclaimed, asserting 10 claims against AmSouth. After obtaining leave of the court on two occasions, Zielke amended his counterclaim to add nine other claims. The court entered a summary judgment in favor of AmSouth on 12 of the claims; it later reinstated two of those claims. As a result, nine of the counterclaims went to trial: (1) wrongful repossession; (2) conversion at the time of taking; (3) failure to dispose of the repossessed automobile in a commercially reasonable manner; (4) conversion at the time of sale; (5) fraud; (6) promissory fraud; (7) conspiracy to breach the duty of good faith in disposing of the repossessed collateral of others; (8) wanton and negligent training[1]; and (9) wanton *Page 358 
and negligent hiring. At the close of the evidence, Zielke withdrew three of the claims: (1) wrongful repossession; (2) failure to dispose of the repossessed automobile in a commercially reasonable manner; and (3) wanton and negligent hiring. The jury returned a verdict in AmSouth's favor on its claim and on all six of Zielke's surviving claims.
Zielke appeals, arguing that the trial court committed reversible error in not admitting into evidence: (1) the testimony of Zielke's mother; (2) the testimony of Peggy Ackeridge, another person whose automobile AmSouth had repossessed; (3) memoranda written by AmSouth personnel; and (4) an AmSouth manual addressing proper repossession procedure. Zielke also argues that the court committed reversible error in allowing AmSouth to present general statistical information regarding the bank's average recovery on repossessed automobiles. This case was transferred to this court by the supreme court for lack of jurisdiction, pursuant to § 12-1-4, Ala. Code 1975.
Questions concerning the admissibility of evidence and testimony rest largely within the discretion of the trial court and will not be disturbed on appeal unless the court abuses that discretion. AmSouth Bank, N.A. v. Spigener,505 So.2d 1030, 1041 (Ala. 1986); May v. Moore, 424 So.2d 596, 603
(Ala. 1982). We address each of Zielke's contentions in turn.
 I. Virginia Zielke's Testimony
Virginia Zielke, out of the presence of the jury, testified that Sigler had contacted her on February 27, 1991. According to Mrs. Zielke, Sigler inquired about Zielke's whereabouts, informed her that Zielke was in default, and verbally berated her for not disclosing Zielke's address or telephone number. Zielke argues that the court abused its discretion in refusing to admit Mrs. Zielke's testimony, because, he says: (1) her testimony was relevant to the element of intent to deceive in his claim of promissory fraud; (2) her testimony was relevant to the element of prior notice or knowledge in his claims of negligent and wanton training; and (3) her testimony was properly admissible to impeach Sigler's testimony.
 A. Promissory Fraud
To establish promissory fraud, Zielke had to show: (1) that AmSouth made a misrepresentation; (2) that the misrepresentation was of a material fact; (3) that he justifiably relied upon the misrepresentation; (4) that damage or harm proximately resulted from the reliance; (5) that, at the time of the misrepresentation, AmSouth had no intention to perform; and (6) that, at the time of the misrepresentation, AmSouth had a present intent to deceive. Pinyan v. CommunityBank, 644 So.2d 919, 923 (Ala. 1994). A present intent to deceive can be established through circumstantial evidence relating to events that occurred after the alleged misrepresentations were made. Vance v. Huff, 568 So.2d 745, 750
(Ala. 1990); Rasp v. Ballard, 651 So.2d 39, 41
(Ala.Civ.App. 1994); Sealing Equip. Products Co. v. Velarde,644 So.2d 904, 908 (Ala. 1994).
Zielke's claim of promissory fraud arose from Sigler's alleged promise, on March 25, 1991, to extend the time of payment to March 29, 1991. He offered Mrs. Zielke's testimony as circumstantial evidence that AmSouth had had a then present intent to deceive. Mrs. Zielke, however, stated in her testimony that the telephone conversation occurred on February 27, 1991. Therefore, the circumstantial evidence with which Zielke sought to establish AmSouth's "present intent to deceive" related to an event occurring before the alleged misrepresentation. The court properly excluded Mrs. Zielke's testimony as it related to the element of present intent to deceive in Zielke's promissory fraud counterclaim.
 B. Wanton and Negligent Training
An employer may be held responsible for its employee's incompetence when *Page 359 
that employer has notice or knowledge, whether presumed or actual, of such incompetence. Big B, Inc. v. Cottingham,634 So.2d 999 (Ala. 1993). Evidence of specific acts of alleged incompetency is not admissible to prove that the employee was negligent in doing the act complained of, but is admissible to prove that the employer had notice of the employee's incompetency. Id. Zielke contends that Mrs. Zielke's testimony was relevant to show that AmSouth had prior notice or knowledge of what he alleges to be Sigler's incompetence in making collection calls. We disagree.
Zielke presented no evidence that, before Sigler's conversation with Mrs. Zielke, AmSouth had or should have had notice that Sigler was unskilled in the art of collection call procedure. Although Mrs. Zielke's reporting of the conversation to AmSouth may have served as notification that Sigler was incompetent regarding proper procedure, there is no evidence in the record that Sigler continued to engage in this conduct after AmSouth had received this notification. Because there was no subsequent tortious act involving a collection call and Zielke's account, Mrs. Zielke's testimony was immaterial.
We also note that the only conceivable resulting damage caused by the call and suffered by Zielke would have been a possible invasion of privacy. Zielke's complaint contained a claim alleging invasion of privacy, but the court entered a summary judgment in favor of AmSouth on that counterclaim. Zielke, therefore, had no substantive basis for the element of damage in his wanton and negligent training claims as they related to Mrs. Zielke's testimony. The court's exclusion of Mrs. Zielke's testimony, if it was error at all, was harmless error. Rule 45, Ala. R.App. P.
 C. Impeachment of Sigler's Testimony
During cross-examination, Sigler described what he considered to be proper collection call procedure and stated that he began working on Zielke's account in early March 1991. Zielke then attempted to offer Mrs. Zielke's testimony to show not only that Sigler had violated the procedure, but also that he had contacted her regarding Zielke's account on February 27, 1991. Following a brief hearing, the court refused to allow the jury to hear Mrs. Zielke's testimony.
After reviewing the record, we conclude that the exclusion of Mrs. Zielke's testimony as it related to Sigler's impeachment was not reversible error. Mrs. Zielke's testimony was not material to any of the counterclaims tried to the jury. Further, Mrs. Zielke's testimony was not admissible for any purpose independent of the contradiction regarding the dates and, therefore, was properly excluded. Gober v. Khalaf,628 So.2d 416, 417 (Ala. 1993).
 II. Peggy Ackeridges Testimony
Peggy Ackeridge, out of the presence of the jury, testified that, in the fall of 1991, Sigler wrongfully repossessed her car. Ackeridge testified that Sigler, while repossessing her automobile, stated that there would be no adverse impact upon her credit history if she voluntarily gave him the keys to the automobile. She surrendered her keys and later redeemed her automobile. Zielke argues that the court abused its discretion in refusing to admit Ackeridge's testimony, because, he says: (1) the testimony was relevant to show an intent, plan, or scheme on the part of AmSouth to wrongfully repossess automobiles; (2) the testimony was relevant to show AmSouth had wantonly and negligently trained Sigler; and (3) the testimony was relevant to show AmSouth had a pattern and practice of wrongfully repossessing and converting its customers' automobiles. At trial, however, Zielke offered Ackeridge's testimony on the grounds that it was relevant to the counterclaim alleging wanton and negligent training; therefore, we address only that portion of Zielke's argument on appeal.[2] Louisville Nashville R. R. v. Fox, 11 Ala. App. 253,260, 65 So. 917, 918 (1914); see Bolen v. Hoven, 143 Ala. 652,39 So. 379 (1905); Home Ins. Co. of New *Page 360 York v. Trammell, 230 Ala. 278, 280, 160 So. 897, 899 (1935).
In wanton and negligent training claims, evidence of other acts by the employee are admissible to show incompetency and notice to the employer. Big B, Inc., supra, at 1003. Collateral fraudulent conduct by an employee may be admissible against an employer to show the employer's knowledge of the employee'spre-existing tendencies. Charles W. Gamble, McElroy's AlabamaEvidence, § 34.02(2) (5th ed. 1996) (citing Northwestern Mut.Life Ins. Co. v. Sheridan, 630 So.2d 384 (Ala. 1993)). The events of which Ackeridge testified occurred seven months after AmSouth had repossessed Zielke's automobile. The evidence did not concern Sigler's pre-existing tendencies. The court, therefore, did not err in excluding the testimony.
We also note that Ackeridge's testimony is not logically relevant to the counterclaims of wanton and negligent training. See Gamble, supra, § 34.02(4). The repossession of Ackeridge's automobile is factually dissimilar from the repossession of Zielke's automobile. Ackeridge was not offered an extension of time to make all delinquent payments, as Zielke alleged he (Zielke) was. Rather, the alleged misrepresentation in Ackeridge's situation concerned Sigler's persuading her to surrender the keys to the automobile.
 III. AmSouth Employee Memoranda
Zielke contends that the court abused its discretion in excluding memoranda written by Sigler and Robert Lary, Sr., who was the interim manager of AmSouth's Mobile dealer loan department in the spring of 1991. Lary was not Sigler's supervisor. Lary's memorandum concerned his notification by another AmSouth employee of Mrs. Zielke's complaint regarding her telephone conversation with Sigler and Lary's subsequent discussion with Sigler regarding that complaint. Sigler's memorandum documented his discussion with Lary and included a reference to a second telephone conversation with Mrs. Zielke in which Sigler apologized for the first telephone call. Zielke argues that these documents were relevant to the element of intent in his claim alleging promissory fraud and to the element of prior notice or knowledge in his claims alleging wanton and negligent training. For the same reasons stated in our discussion concerning the exclusion of Mrs. Zielke's testimony as it related to these claims, we conclude that the court properly excluded these memoranda.
 IV. AmSouth Manual
Pursuant to Zielke's discovery request, AmSouth produced a manual entitled "Consumer Collection Department Recovery." This manual was written in 1993 and was provided to AmSouth's employees in Birmingham. Zielke argues that the court abused its discretion in refusing to admit portions of the manual.[3] It is undisputed that the department involved in the repossession of Zielke's automobile had no written guidelines in effect at the time of the repossession.
 A. Wanton and Negligent Training
Zielke argues that AmSouth wantonly and negligently failed to train Sigler to properly repossess automobiles and other AmSouth employees to dispose of repossessed collateral in a commercially reasonable manner. Because some employees' conduct may have violated the guidelines set forth in the manual, he asserts that the manual was relevant to show that AmSouth had inadequately trained its employees.
We disagree. The focus of the inquiry is whether AmSouth trained its employees to repossess collateral without breaching the peace and to dispose of that collateral in a commercially reasonable manner. §§ 7-9-503 and -504, Ala. Code 1975. Zielke did not claim that AmSouth's manual contains guidelines inconsistent with that law and that he had suffered harm as a result. Accordingly, the court did not err in excluding the manual or portions of it. *Page 361 
 B. Impeachment of Williams's Testimony
During his testimony, George Williams, Sr., senior vice president of AmSouth, stated that there is no requirement that a minimum number of bids be taken before a repossessed automobile may be sold. Zielke's counsel later asked Williams to read from the manual the portion stating that five bids are required. Although the court allowed Zielke to impeach Williams's testimony in this manner, the court refused to allow him to identify the information as having come from AmSouth's manual. Zielke argues that the court committed reversible error in refusing to allow him to publish to the jury the pertinent portion of the manual.
We disagree. The court's refusal to publish the portions of the manual, if error at all, was harmless error. Rule 45, Ala. R.App. P. Regarding the disposition of Zielke's repossessed automobile, the focus is upon whether AmSouth and its employees disposed of the automobile in a commercially reasonable manner. One could infer from Williams's testimony that AmSouth had disposed of Zielke's automobile in a commercially reasonable manner. Zielke's expert witness, however, testified to the contrary, stating that the manner of disposition was not commercially reasonable. Therefore, evidence concerning the legal requirements as opposed to AmSouth's activities was before the jury, and Zielke was not injuriously affected by the exclusion.
 C. Impeachment of Sigler's Testimony
Sigler testified that he did not receive from AmSouth periodic updates concerning changes in collection laws. Zielke argues that the court committed reversible error in refusing to allow him to use the manual to impeach Sigler's testimony. The record does not indicate that Zielke ever offered the manual to impeach Sigler's testimony. This court will not consider a specific objection to the exclusion of evidence when that objection was not made to the trial court. Louisville Nashville R.R., supra; see Bolen, supra; Home Ins. Co. of NewYork, supra. We, therefore, pretermit discussion of this point on appeal.
 V. General Statistical Data
Williams testified that the bank compiled statistical data concerning the bank's recovery on deficiency balances following the disposition of repossessed collateral. Williams also testified that, on average, AmSouth loses approximately $3,000 on each repossessed automobile. Zielke argues that the court abused its discretion in refusing to exclude Williams's testimony because, he says, the testimony was irrelevant and unduly prejudicial.
If evidence is offered to prove a fact that is material or of consequence in the determination of an action and if that evidence has a tendency to make the existence of that fact more or less probable, then the evidence is relevant. Ala. R. Evid. 401. Relevant evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of undue prejudice. Ala. R. Evid. 403. The question of prejudice rests within the trial court's discretion, and a ruling on that question will not be reversed except when the court has abused its discretion. Ott v. Smith, 413 So.2d 1129, 1132 (Ala. 1982).
Williams's statements concerning the data were relevant to the element of intent in Zielke's counterclaim alleging civil conspiracy. In order to prove a claim of civil conspiracy, Zielke had to show that an AmSouth agent agreed with another person to accomplish an unlawful end, by civil law standards, and intended that the unlawful end be achieved. Eidson v. OlinCorp., 527 So.2d 1283, 1285 (Ala. 1988). The testimony tended to show that AmSouth had little or no reason to engage in conspiratorial conduct regarding the sale of repossessed collateral. We also disagree with Zielke's contention that the evidence is unduly prejudicial. Nothing in the record indicates that there was a less prejudicial alternative to Williams's testimony or that the substance of the testimony could be inferred from previously admitted evidence. Gamble, supra, § 21.01(4). The court did not abuse its discretion in admitting Williams's testimony concerning the statistical data. *Page 362 
 Conclusion
The trial court did not abuse its discretion in excluding or admitting evidence, as argued by Zielke.
AFFIRMED.
CRAWLEY, J., concurs.
ROBERTSON, P.J., concurs in the result.
[1] Zielke claimed that AmSouth was wanton and negligent in training and supervising its employees. He later withdrew his claim for wanton and negligent supervision and proceeded with claims for wanton and negligent training. After reviewing Alabama caselaw, we see no distinction between claims of wrongful supervision and claims of wrongful training. We, therefore, treat the cases addressing wrongful supervision as applicable to claims of wrongful training. See J. Mark Hart,Wrongful Supervision: New Attention on an Old Tort, 55 Ala. Law. 65, 96 (1994).
[2] Zielke also offered Ackeridge's testimony to impeach Sigler. On appeal, however, Zielke does not argue impeachment as a grounds of admissibility.
[3] In his brief, Zielke argues that the court erred in refusing to admit portions of this recovery manual and portions of another manual. We find no reference to a second manual in the trial transcript.